1809.

Huntt & Parks
vs
Gist

---

DECEMBER.

HUNTT & PARKS vs. GIST, *et al.*

W P, being seized of a tract of land called *P D*, containing 275 acres, executed a bond of conveyance to J C, conditioned that he would convey to him all his right, &c. "of, in and to, 120 acres of land called *P D*, situate, in the county of B, with the appertenances thereunto belonging, or appertaining, now in the possession or occupation of the said W P." On a bill in chancery for a specific performance, &c. Held, that there being no designation of the 120 acres of land, nor any description whereby it could be identified and located, parol evidence is not admissible to show that it was intended by the parties that they were to be laid off at the southernmost part of the tract. That the bond is void for uncertainty, except on the principle of election, and that there was no evidence to prove that there was any election made by either of the parties anterior to the time of the execution of the deed from W P, for part of the tract described by metes and bounds, to one of the defendants who was a fair and bona fide purchaser of the land conveyed to him, without notice that there was any designation of the 120 acres.

APPEAL from a decree of the Court of Chancery. The bill filed by the appellees against the appellants, on the 16th of January 1795, stated that *William Parks*, deceased, was seized and possessed of a tract of land in *Baltimore* county called *Turkey Cock Alley*, containing 50 acres, which by virtue of a special warrant, was on the 10th of July 1754 resurveyed for him, and a certificate thereof returned into the land office, by which he caused to be added 102 acres of land supposed to be vacant, and consolidated the whole into one survey by the same name of *Turkey Cock Alley*. That *Parks*, neglecting to compound for the added vacancy within the time required, a proclamation warrant was thereupon granted to *Edward Stevenson*, and he, on the 22d of February 1764, assigned the same to *Parks*, who by virtue of the warrant of proclamation and assignment, on the 28th of the same month, had resurveyed for him the added vacancy before mentioned, excluding seven acres thereof as being within the lines of elder surveys, and upon the resurvey caused to be added the quantity of 127 acres of vacant land, giving to the whole the name of *Parks's Death Knot;* and on the 5th of March 1764, he obtained a patent on the certificate. That on the 14th of April 1764, *Parks* executed and delivered to *Joshua Cockey*, deceased, a bond of conveyance for 120 acres of the land called *Parks's Death Knot*, by which bond it was, as the complainants believe, intended to secure to *Cockey* 120 acres of the vacancy added on the proclamation warrant, forming the southernmost parts of *Parks's*

*Death Knot.* That before *Parks* obtained the assignment from *Stevenson,* (which was procured by *Cockey,*) or at the time of such assignment, it was agreed between *Parks* and *Cockey,* that as *Parks* was unable to pay the caution money on the certificate to be returned in virtue of the assignment, *Cockey* should pay the same, and should have, for such payment, 120 acres of the land, to be secured by the certificate; in consequence whereof *Cockey* did pay the caution money, and thereupon patent issued, as before stated, to *Parks,* and the bond of conveyance was given in pursuance of the agreement. That *Parks,* in his life-time, although he never made any conveyance in pursuance of the bond, always acknowledged the right of *Cockey,* and always was ready and disposed to make the conveyance. That *Parks* died about 10 years ago intestate, leaving a son named *William Parks,* (one of the defendants,) of full age, his heir at law, who hath also at different times acknowledged the bond of conveyance, and the equitable right thereby created. That *Cockey* died some time in 1765, having first duly made his will, dated the 3d of December 1764, whereby, among other things, he devised as follows: "Item. I give and bequeath to my eldest daughter *Penelope Deye Cockey,* 100 acres of land, being part of a tract of land known by the name of *Parks's Death Knot,* lying in the county aforesaid, which said parcel of land I give and devise unto her and her heirs for ever;" and of the said will constituted and appointed *Thomas Cockey Deye* sole executor. That *Joshua Cockey* left the complainant, *Thomas Deye Cockey,* his eldest son and heir at law, then an infant under the age of 21 years, and also the other children mentioned in the will. And that after the death of *Joshua Cockey,* his executor proved his will, and took out letters thereon, and, among other papers of *Joshua Cockey,* came to the possession of the bond of conveyance, and kept the same in his possession until the 4th of February 1798, when he delivered it to the complainant, *T. D. Cockey,* as heir at law of *J. Cockey.* That *Penelope Deye Cockey,* afterwards intermarried with *Thomas Gist,* and she and her husband are two of the complainants in this cause. That *Thomas Deye Cockey,* one of the complainants, believing that the whole of the land intended to be secured by the bond of conveyance was meant to be devised to *Penelope Deye Cockey,* now *Gist,* by the will of *Joshua Cockey,* al-

though only 100 acres are therein mentioned, did on the 17th of January 1794, execute a bond of conveyance, by which he bound himself to convey to her, in fee, all his right, title and interest, in the said land. That on the 19th of December 1789, *Parks*, the younger, sold and conveyed part of *Parks's Death Knot* to *Job Huntt*, (one of the defendants;) and that the land included, within the metes and bounds in that conveyance, is the south east part of the land intended to be secured by the bond of conveyance before mentioned; and that *Huntt* had full knowledge of the bond, and had seen and read it, and well knew the premises at the time of his purchase, and before the making of the conveyance to him. That on the 13th of March 1790, *Parks*, for the purpose of indemnifying and securing *Huntt* from all claims against the land so conveyed to him, did by another deed convey to him in fee all the residue of *Parks's Death Knot*, with proviso that if *Parks* should indemnify him from all claims against the land first conveyed to *Huntt*, the last mentioned conveyance should be void. That on the 10th of April 1790, *Parks*, among the other lands, conveyed to *Huntt* in fee all the tract called *Turkey Cock Alley*, with an exception as to a small part thereof, and also all the tract called *Parks's Death Knot*, excepting 31 acres thereof before conveyed to *Huntt* by the deed first herein referred to, and also excepting 120 acres of that tract, for which the bond of conveyance was given. That *Parks*, the elder, at sundry times, and down to the time of his death, applied to *Deye*, as executor of *Cockey*, to pay various assessments and charges on the 120 acres of land in the bond of conveyance mentioned, alleging, that as the land belonged to the estate of *Cockey*, all charges thereon ought to be paid out of his estate; in consequence of which applications *Deye*, as executor of *Cockey*, paid all such assessments and charges as were exhibited to him by *Parks*, who acknowledged the bond of conveyance, and that the consideration of the bond had been duly paid, and frequently offered to *Deye* to make him a conveyance of the land mentioned in the bond, as executor of *Cockey*, &c. That, in the deed of conveyance last before referred to, *Parks*, the younger, and *Huntt*, (the defendants,) have both acknowledged the bond of conveyance, and an existing right under and in virtue of the same. That *Huntt*, in consequence of the conveyances to him from *Parks*, hath

1809

Huntt & Parks
vs
Gist

entered into and taken possession of the land therein men-tioned. *Prayer*, that the defendants may be compelled to convey to the complainant, *Penelope Deye Gist*, in fee simple, or to such of the complainants as may be thereto entitled, the 120 acres of land by the bond of conveyance meant and intended to be conveyed; and for other and further relief, &c.

*Exhibit*, (among others.) The bond of conveyance from *Parks* and wife, to *Joshua Cockey*, dated the 14th of April 1764, in the penal sum of £500, and conditioned as follows: "The condition of this obligation is such, that if the above bounden *William Parks*, and *Eleanor* his wife, and each and every of them, and each and every of their heirs, executors, administrators and assigns, do and shall, upon demand and at the request, cost and charges, of the above named *Joshua Cockey*, his heirs or assigns, well and truly convey and assure, or cause to be conveyed and assured unto him, the said *Joshua Cockey*, his heirs and assigns, for ever, all the estate, right, title and interest, of them the said *William Parks*, and *Eleanor* his wife, and their heirs, and each and every of them, of, in and to, one hundred and twenty acres of land called *Parks's Death Knot*, situate, lying and being, in the county of *Baltimore* aforesaid, with the appertenances thereunto belonging or appertaining, now in the possession or occupation of them the said *William Parks*, and *Eleanor* his wife, by such sufficient conveyances and assurances in the law, as by the said *Joshua Cockey*, his heirs or assigns, or his or their counsel learned in the law, shall advise and require; then the said obligation to be void and of none effect, or else to be and remain in full force and virtue in law."

The *answers* of the defendants stated, among other things which it is not material to notice, that they were to-tally ignorant for what consideration the land was to be conveyed, or what part of the land was intended to be conveyed; and they did not know or admit that the southern-most or south easternmost parts was intended to be convey-ed under the bond of conveyance. That *Cockey*, or any person claiming under him, never was in possession of any part of the land—nor did they ever hear at any time that *Cockey* was, by virtue of the contract, entitled to the south-ernmost or south easternmost part. That *Penelope*, one of

the complainants, came of full age 15 years past or more, and *T. D. Cockey*, (one other of the complainants,) not less than 11 or 12 years past. That *Parks*, the grantor, and after his death, *Parks*, the son, were willing to comply with the bond of conveyance, and convey to *Cockey*, or to whomsoever was entitled under the bond, whatever land they were thereby entitled to have conveyed to them; but no person chose to come forward and receive a conveyance, or ascertain what part of the land he, she or they, were entitled to under the said contract. That on the 23d of October 1789, *Parks*, being desirous of selling the residue of the land to extricate himself from difficulties under which he then suffered, did advertise publickly in the *Maryland Journal and Baltimore Advertiser*, requesting any person who was entitled to the benefit of the bond of conveyance to appear, prefer their claim, and receive a conveyance for the land they might be entitled to thereby. That *T. D. Cockey* and *Penelope Deye Gist*, were then both of full age, and that neither of them did apply to receive the conveyance, although thus called upon. That *Parks* was at that time under execution, and had no method of freeing himself therefrom but by a sale of some part of his lands. That he applied to *Huntt*, and proposed to sell him a part of his lands in order to raise money to free himself from the execution; and in consequence *Huntt* purchased from *Parks* the lands mentioned in the deed of the 19th of December 1789, which was then supposed to contain 31 acres, for which *Huntt* paid six dollars per acre. That the land being found to contain eight and a quarter acres more, he paid for the surplus on the 15th of March 1791. That *Huntt* was induced to purchase the particular part of the land described in that deed, because it lay adjoining to lands which he then owned; and the greatest part thereof actually ran in, and lay between, two tracts of land owned by him. That *Huntt* had seen and knew of the bond of conveyance which had been so executed by *Parks*, the elder, to *J. Cockey*, and had advised with counsel as to the effect thereof, and it was by the advice of counsel that he made his purchase. That on the 10th of April 1790, *Parks* executed a deed to *Huntt* for the lands therein mentioned, which was intended to secure to *Huntt* the payment of £88 3 6, then due to him, with interest. *Huntt* admitted, that on the 13th of March 1790, *Parks*

executed in due form of law another conveyance to him, the object and intention of which was to secure and guarantee to him the lands first sold to him; that after deducting the lands so conveyed by *Parks* to *Huntt* by the first conveyance, there remained a greater quantity of *Parks's Death Knot*, than was contracted by the bond of conveyance to be conveyed to *Cockey*. That they were instructed, that after the length of time which had elapsed since the execution of the bond of conveyance, without the complainants either possessing the land so alleged to have been contracted to be sold to their father, or claiming an execution of the contract, the complainants were not, nor was either of them, entitled to the aid of this court specifically to execute the contract to the prejudice of *Huntt*, who is a purchaser for a valuable and *bona fide* consideration; and they claimed the benefit of the laches of the complainants, and of those under whom they claimed, and of the length of time, as fully and to all intents and purposes as if they had pleaded the same, and relied thereon for their plea.

*Testimony* was taken and returned under a commission; and the lands were directed to be surveyed, and a plot thereof was returned.

Kilty, Chancellor, (July term 1806.) The chancellor is of opinion from the evidence, that the bond of conveyance was intended to secure 120 acres of the vacancy added on the proclamation warrant taken out by *Edward Stevenson*, and assigned to *William Parks*, on which a survey was made the 28th of February 1764, as appears by the certificate returned to the land office, being in the whole 127 acres. And also that it was intended to exclude the part added as the third vacancy, although the third vacancy is returned as containing only six acres. The first and second vacancy added are returned as containing, the one six, and the other 115 acres, making together 121 acres instead of 120, which it may be inferred from the evidence they were supposed to contain by the parties to the bond. The complainant, *Penelope Deye Gist*, is therefore entitled under the will, and bond of conveyance from *Thomas Deye Cockey*, which are not contested, to a conveyance for that part of *Parks's Death Knot*, which is claimed by the bill. The part of *Parks's Death Knot* which was conveyed by the defendant *William Parks*, to the other defendant,

1809

Huntt & Parks
vs
Gist

1809

Huntt & Parks
vs
Gist

Job Huntt, by the deed of the 19th of December 1789, was stated therein to contain 31 acres, and by the mortgage of the 13th of March 1790, the residue is also conveyed to him, thereby vesting in him the legal title in the whole. And inasmuch as *Parks* has an equitable title to the residue, and by joining in the conveyance for the part conveyed by him to *Huntt* will not be bound to make a general warranty, or be liable to any risk or loss thereby, it is considered that a joint deed will be the most proper to vest the legal title in the complainant, *Penelope Deye Gist*, according to the bonds—*Decreed*, that the defendants shall, by a good deed to be executed by them, and acknowledged and recorded according to law, give, grant, &c. to the complainant, *Penelope Deye Gist*, and her heirs, 120 acres of land called *Parks's Death Knot*, situate, &c. the said 120 acres being part of a tract of land resurveyed for *William Parks*, deceased, father of *William Parks*, one of the defendants, on the assignment of *Edward Stevenson*, on or about the 28th of February 1764, and patented to *William Parks*, deceased, on or about the 15th of March 1764; to be laid off as follows, to wit: To include the whole of the first vacancy described in the certificate of the resurvey, to begin at, &c. containing six acres: to include also the second vacancy described in the certificate of the resurvey, to begin, &c. containing 115 acres, except one acre thereof, which one acre is to be taken off by extending reversely the 16th line of the resurvey on *Turkey Cock Alley*, on which the proclamation warrant was taken out, &c. And all the estate, &c. of the defendants therein, and which was in *William Parks*, deceased, and all and singular the hereditaments and appurtenances to the same belonging, or in any manner appertaining. And upon the due execution, acknowledgment, and recording of the deed, the complainant, *Penelope Deye Gist*, her heirs and assigns, shall be entitled to hold the said land free, clear and discharged, from all claim of the defendants, or either of them; the said conveyance being in satisfaction of the bonds in the proceedings mentioned. *Decreed* also, that the defendants, and each of them, deliver up to the complainants, *Thomas Gist*, and *Penelope Deye Gist his wife*, the quiet and peaceable possession of the land hereby decreed to be conveyed; and that they pay to the complainants the costs

of this suit, &c. From this decree the defendants ap-
pealed to this court.

1809.

Huntt & Parks
vs
Gist

The cause was argued before CHASE, Ch. J. GANTT,
and EARLE, J.

*Martin* and *Brice*, for the Appellants, referred to *Co.
Litt.* 145. 2 *Bac. Ab.* tit. *Election*, (B) 443. *Taylor
vs. Stebbert*, 2 *Ves. jr.* 437. *Moor*, 72, case 197. *Hay-
ward's* case, 2 *Coke*, 36.

*Johnson*, (Attorney General,) and *Winder*, argued for
the Appellees.

CHASE, Ch. J. delivered the opinion of the court. The
court are of opinion, that in the bond of conveyance from
*William Parks*, senior, to *Joshua Cockey*, there being no
designation of the 120 acres of land to be conveyed to
*Cockey*, nor any description whereby the same could be
identified and located, parol evidence is not admissible to
show that it was intended by the parties that the 120
acres were to be laid off at the southernmost part of the
tract of land called *Parks's Death Knot.* That the bond
is void for uncertainty, except on the principle of elec-
tion; and there is no evidence to prove that there was any
election made by either of the parties, or their represen-
tatives, anterior to the time of the execution of the deed
from *William Parks*, junior, to *Job Huntt*, on the 19th of
December 1789. That *Huntt* was a fair and *bona fide*
purchaser of the land conveyed to him by that deed, with-
out notice that there was any designation of the 120 acres
to be conveyed in virtue of the bond of conveyance to
*Cockey*, or his heirs. That *Penelope Deye Gist* is entitled
to a conveyance of 120 acres of land, part of the 222
acres of vacancy secured by the proclamation warrant
taken out by *Edward Stevenson*, and assigned to *Parks*,
the elder. *Decreed*, that the decree of the court of chan-
cery be reversed, with costs to the appellants, and that the
appellants, by a sufficient deed or deeds, convey to *Pene-
lope Deye Gist*, one of the appellees, and her heirs, 120
acres of the vacancy of 222 acres, to be laid off together
in one body, if practicable, if not, so as to be most conve-
nient, exclusive of the land conveyed to *Huntt* by *Parks*,
the younger, by the deed of the 19th of December 1789,

and exclusive of the land conveyed by *Parks* to *Arabella Worrell.* That the court of chancery make all necessary orders, and take measures for having this decree carried into full and complete effect.

DECREE REVERSED, &c.