JOHN HELMIK *v.* JOHN J. PRATT, Surviving Executor.

*Sale of Land—Sufficiency of Description—Specific Performance.*

A contract for the sale of land, to be specifically enforcible, must contain a description of the land, either complete in itself, or such as to supply data and information sufficient to enable the court, with proper evidence, to identify and locate the land definitely and with certainty. p. 690

In a suit for the specific performance of a written contract for the sale of land, if the writing itself supplies information from which it may be naturally and legitimately inferred that the parties intended it to affect a certain definite tract of land, parol evidence is admissible to connect the description in the contract with the land to which it refers, but not if the contract does not supply such information. pp. 690-695

Where a contract for the sale of land gave the names of the parties, the price, the dimensions of the tract sold, the property of which it was a part, and its location with reference to a named river, to an avenue, and to a fence surrounding a certain property, and also recited the payment of part of the price and named the time for payment of the balance, *held* that, it being inferrible from the contract, taken in connection with the circumstances under which it was made, that the parties dealt with reference to specific property, the location of which was known to both, the testimony of a surveyor should have been admitted

to connect the description in the contract with the land intended
to be described.                                    pp. 695, 696

*Decided December 7th, 1927.*

Appeal from the Circuit Court for Baltimore County,
In Equity (GRASON, J.).

Bill by John Helmik against John J. Pratt, surviving
executor of the last will and testament of Katie Mladejov-
sky, deceased. From a decree dismissing the bill, plaintiff
appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Frank V. Moale,* for the appellant.

*J. Howard Murray,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Katie Mladejovsky, a resident of Baltimore County, died
on January 8th, 1926, leaving a will, executed in due form,
in which she named John J. Pratt and Anna Helmik execu-
tors. The will was probated in ordinary course and, Anna
Helmik having died, Pratt qualified as sole executor.

After Pratt had qualified as executor, John Helmik, the
appellant, demanded that he convey to him, Helmik, a lot
of ground, which he alleged Mrs. Mladejovsky had sold to
him by a valid and enforceable contract. Pratt refused to
comply with that demand, and on March 15th, 1927, Helmik
filed, in the Circuit Court for Baltimore County, a bill for
the specific performance of the alleged contract, against the
executor. The defendant demurred to the bill and, the de-
murrer having been overruled, he answered. The case was
tried in open court, and, at the conclusion of the com-
plainant's case, the court declined to hear evidence for the
respondent, and later, on May 31st, 1927, signed a decree
dismissing the bill. The appeal is from that decree.

The contract referred to in the bill of complaint is in the following form:

"Dec. 16, 1926.

"This is to certify that I, the undersigned on the above date sold to John Helmik, one unimproved lot located in Balto. County for the sum of $750.00, seven hundred and fifty dollars for which I have received this date the sum of $600.00, six hundred dollars, the balance to be paid in ninety days from above date.

"Description as follows:

"75 yards facing Back River and running north from a fence surrounding a place known as Charles Wright, thence west 75 yards, parallel with Eastern Ave., thence south 75 yards, thence east to place of beginning. The said lot is a part of what was formerly known as Gilmor property, Fairy Grove and Columbus Park.

"Katie Mladejovsky.

"Test:

"Robert H. Lafferty."

Although the defendant intimates rather than charges in his answer that the signature attached to the contract, and purporting to be that of Mrs. Mladejovsky, is not in fact her signature, the only evidence offered at the trial shows that it was. It further appeared from the testimony of Robert H. Lafferty, the witness to the contract, that it was executed under the following circumstances:

Lafferty, at one time a policeman, is now in the "collection and investigating business" and has, he said, "often made out contracts and leases for people, bills of sale, etc." He knew Mrs. Mladejovsky and was a frequent visitor at her home. In the course of his testimony he said that, on or about December 16th, 1926, he "received a telephone call at my home at about ten thirty in the morning, in which she requested me to come to her home, that she had some writing for me to do, the words she used, and I got on the car that leaves Holliday and Baltimore Streets eleven o'clock, and

I suppose I arrived there about 11.20 or 11.25 in the morn-
ing. * * * She said, Mr. Lafferty, I want you to do some
writing for me, and I said, 'What is it, Mrs. Mollie?' She
said, 'I sold John a piece of land, I want you give him a
receipt'; I said, 'All right, Mrs. Mollie, what piece of land?'
She said, 'the piece of land located down there at Charlie
Wright's place,' and I said, 'It would have to be described,'
and I immediately went down with John and Mrs. Mollie
and looked at that piece of land, and I described the land
as near as I could, as I knew what I thought was looking in
an eastern direction which I found out from the survey filed.
I was a little northeast and she told me seventy-five yards
each way, I thought it was peculiar, seventy-five yards, but
I didn't question her, and she said to give him seventy-five
yards on Back River and seventy-five yards in a northern
direction and seventy-five yards in a southerly direction and
seventy-five yards in an eastern direction to the point of be-
ginning, and I wrote the contract as follows: "Beginning at
a point at a fence facing Back River and a place called
Charles Wright's place, that was as near as I could describe
it, and, I said, running north parallel with Back River
seventy-five yards, thence in a westerly direction seventy-five
yards, and thence in a southerly direction, seventy-five yards
and thence in an eastern direction seventy-five yards to the
point of beginning seventy-five yards, the property known
as Gilmor property, Fairy Grove and also as Columbus Park.
I asked her if that was correct. * * * We went on the prop-
erty and around it both and Mr. Helmik, John, contemplated
getting that property.   Q. Did they both agree as to where
the property was located?   A. Absolutely.   Q. Was that defi-
nitely understood by both?   A. Certainly.   She showed the
land to me and there was nothing else to do; seventy-five
square yards, that is all there was to it."   He also said that
the land described in the contract was the land he went over
with her, and that the lot sold to Helmik was part of a
larger tract of forty-eight acres owned by Mrs. Mladejovsky.

There was other evidence offered by the complainant
tending to corroborate Lafferty, but, since it adds nothing to

the legal effect of that to which we have referred, no further reference to it need be made.

After that testimony had been offered, Albert E. Pohmer, a surveyor, who had "worked" all over the land in controversy, was called, apparently to prove, (1) that the land described in the contract could be identified and located, and (2) its value. He testified that he had prepared a plat from field notes of an actual survey which he had made of the property; that he had a copy of the contract, and "from that copy" he "went over the land." He was then asked whether the following description of the property, as given in the bill of complaint: "Beginning at a point on the shore line of Back River, where the southeasternmost outline of the whole tract of land, described in the deed recorded among the Land Records of Baltimore County, in Liber W. P. C. No. 331, folio 197, would intersect the shore line of said river and running thence from said place of beginning and binding on the outlines of the land described in said deed south 28 degrees 54 minutes west 225 feet, thence leaving said outline and running north 40 degrees 35 minutes west 225 feet, thence north 31 degrees 19 minutes east 225 feet, to the shore line and waters of Back River, south 21 degrees 31 minutes east 100 feet and south 54 degrees 44 minutes east 125 feet to the place of beginning," was prepared by him "from the contract." An objection to that question was sustained, and the complainant then offered to prove that "the contract of sale between John Helmik and Katie Mladejovsky admits of no difference of opinion; that the description of the land mentioned in this contract is easily ascertainable and that the said contract is not vague and uncertain, but is definite in its terms and easily understood and described." That offer was also overruled and exceptions noted to these rulings. The complainant then rested, and the court announced that it would write an opinion on the complainant's testimony, and subsequently a decree was filed dismissing the bill. The reasons for that ruling are stated very clearly and forcibly in the court's opinion, in which he says:

"The trouble with this description is there is no beginning point. Neither are there any calls—such as to a tree; or a stone or a cove. So that the whole description is based on the point of beginning. If there is no beginning point, there is no description. And the first line of this property 'runs north from a fence surrounding a place known as Charles Wright's.' So that this northerly line could run from any point along this fence, no matter how long this fence might be.

"Surely this is entirely too general, vague and indefinite. I hold, therefore, that the description in exhibit one, which is the contract, is really no description at all, for as it begins nowhere it goes nowhere and describes nothing.

"If the description had been such that a surveyor could have located, defined and described the land from it, I would have permitted the surveyor to give in evidence the result of his survey. *King v. Kaiser,* 126 Md. 218."

From this statement of the case it is apparent that the appellant's right to relief depends upon two propositions: (1) That the contract executed by Mrs. Mladejovsky is sufficiently definite to enable the court to identify and locate definitely and conclusively the land to which it refers; and (2) that the testimony of the surveyor offered to show that the land described in the bill of complaint was the same land as that referred to in the contract should have been admitted.

One absolutely essential term in a contract for the sale of land, which must be shown before it can be specifically enforced, is a description of the land, either complete in itself, or which supplies data and information sufficient to enable the court with proper evidence to identify and locate the land definitely and with certainty. Upon that rule the courts are in substantial accord, but in applying it to specific cases there is no such concord.

In *Fry on Specific Performance,* par. 342, the rule is stated in this language: "Every valid contract must contain a description of the subject matter; but it is not necessary that it should be so described as to admit of no doubt what

it is; for the identity of the actual thing and the thing described may be shown by 'extrinsic evidence.' This flows from the very necessity of the case; for all actual things except the contract itself, being outside of and beyond the contract, the connection between the words expressing the contract and things outside it must be established other than by the contract itself, that is, by extrinsic evidence." *Plant v. Bourne,* 2 Ch. D. (1897), 285; *Ogilvie v. Foljambe,* 3 Mer. 53; *Shardlow v. Cotterell,* 20 Ch. D. 90.

Another statement of the rule applicable in such a case is found in *Ryan v. United States,* 136 U. S. 68, where the court quotes the following language from *Eggleston v. Wagner,* 46 Mich. 618: "A further objection is that the proposal did not sufficiently describe the real estate to satisfy the Statute of Frauds. The general principle is not questioned. The degree of certainty with which the premises must be denoted is defined in many books, and the cases are extremely numerous in which the subject has been illustrated. They are not all harmonious. But they agree in this, that it is not essential that the description have such particulars and tokens of identification as to render a resort to extrinsic aid entirely needless when the writing comes to be applied to the subject-matter. The terms may be abstract and of a general nature, but they must be sufficient to fit and comprehend the property which is the subject of the transaction; so that with the assistance of external evidence, the description, without being contradicted or added to, can be connected with and applied to the very property intended, and to the exclusion of all other property. The circumstances that in any case a conflict arises in the outside evidence cannot be allowed the force of proof that the written description is in itself insufficient to satisfy the statute." And in *Halsell v. Renfrow,* 14 Okla. 674, it is said: "It is a general rule that parol evidence cannot be permitted to supply an omission of any essential element of the contract. In *Ferguson v. Blackwell,* 8 Okla. 489, this court held that 'where a sufficient description is given in the contract, parol evidence may be resorted to in order to fit the description

to the thing, but where an insufficient description is given or where there is no description, such evidence is inadmissible because the court will never receive parol evidence both to describe the land, and then to apply the description." To the same effect is *Koch v. Streuter,* 218 Ill. 546. And Pomeroy offers the following test for determining what evidence is "proper." "Parol evidence is always admissible to explain the surrounding circumstances, and situation and relations of the parties, at and immediately before the execution of the contract, in order to connect the description with the thing intended, and thereby to identify the subject-matter, and to explain all technical terms and phrases used in a local or special sense. The description must be sufficient to render the identity clear upon the introduction of such evidence." *Pomeroy on Specific Performance,* p. 390.

While so broad a statement of the rule may not be universally approved, nevertheless it seems to be in harmony with the trend of the later decisions.

Turning to the decisions of this Court, we find that in *Huntt & Parks v. Gist,* 2 H. & J. 498, Parks bound himself to convey to Joshua Cockey all his title and interest in and to "one hundred and twenty acres of land called Parks' Death Knot, situate, lying and being in the County of Baltimore," which was part of other land owned by Parks. On a bill to specifically enforce that contract, Chancellor Kilty found by extrinsic evidence that that description applied to a definite tract of land, and decreed specific performance. On appeal, however, that decree was reversed because "there being no designation of the one hundred and twenty acres of land to be conveyed to Cockey, nor any description whereby the same could be identified and located, parol evidence is not admissible to show that it was intended by the parties that the one hundred and twenty acres were to be laid off at the southernmost part of the tract of land called Parks' Death Knot." But in *King v. Kaiser,* 126 Md. 217, the rigidity of the rule thus stated was to some extent modified. The description of the land affected by the contract under consideration in that case was in this form: "Beginning for

the same at a stone placed at a pine tree at a head of a small
cove emptying into Dark Head and running northeasterly
alongside said cove ninety feet to a pine tree marked 'S. E.';
thence southeasterly along said cove one hundred and thirty-
six feet to a stone alongside of a tree on the bank of Dark
Head; thence running southwesterly along Dark Head two
hundred and eighty feet to a stake in the bank on said Dark
Head; thence running westerly two hundred feet to a stone;
thence northeasterly by a straight line to the place of begin-
ning." In dealing with a contention that that description
was too indefinite, the Court there said: "While it may well
be that the description could have been more precise, it can
not be assumed, as the appellant does, that a surveyor could
not go upon the ground and identify and mark it out defi-
nitely. Certain distinct landmarks are called for, and if
any one of them should not be found it would be a com-
paratively easy matter to reverse the call from another, and
so fully locate the premises." And in *Engler v. Garrett,*
100 Md. 397, it was said: "While, therefore, it is true the
contract does not specify the city or state in which the house
is located, it does give the name of the person who occupied
it at the time, and he being found and identified, his local
habitation can be easily ascertained." And in the most
recent case decided by this Court which touched the question,
*Bellevue Club v. Punte,* 148 Md. 602, the propriety of parol
evidence to connect the land described in the contract with
the land claimed by the appellee was recognized, but specific
performance was refused because "no landmarks are called
for, and the surveyor who did endeavor to run the lines was
compelled to locate two of them by means of vague alleged
possession lines pointed out to him by two persons who had
only known the property a comparatively short time."

The relaxation of the rule against parol evidence has been
carried even further in England and by some American
courts. In *Wylson v. Dunn,* 34 Ch. Div. 569, the facts of
the case, as stated in the syllabus, were these: A proposal
has been made that the two plaintiffs should buy a triangular
field of about three acres, and that the defendant should

buy half an acre of it from them.  One of the plaintiffs and
the defendant met on the field; the defendant wished to
have a piece in one of the angles, and the plaintiff stepped
so as to mark out where a base line would cut off half an
acre.  Some days afterwards the same plaintiff wrote to
the defendant asking her to let them have a letter agreeing
to purchase the half acre she had selected for £350.  She
wrote back, not expressly referring to the other letter, that
she was willing to take half an acre of the land agreed upon
for £350.  The plaintiffs did not obtain a contract with the
owner of the land for the purchase until the 4th of Novem-
ber, which was three months afterwards.  On the 13th of
November the defendant threatened to withdraw, and on the
20th of November her solicitors wrote that she did withdraw
from the contract."  On these facts it was held that the
description was sufficient, and evidence admitted to connect
the land described in the contract with the land "stepped
off."  See also *Ogilvie v. Foljambe, supra; Shardlow v.
Cotterell,* 20 Ch. D. 90; *Plant v. Bourne,* 2 Ch. D. (1897),
285; *Phillips v. Swank,* 120 Pa. St. 76.  And Pomeroy, in
support of his text, cites among other cases *Hollis v. Gurgess,*
37 Kan. 487, where the court said: "Though mentioning
no state, county or town in which, or plat on which, the land
bargained is found, the agreement nevertheless gives a de-
scription which purports to and fitly may designate a par-
ticular piece of land, as the complaint in effect alleges that
it in fact does.  It cannot, therefore, be said to be void for
failure to designate any tract of land as the subject of sale.
The application of that description to the face of the earth—
the identification of the particular piece mentioned is, as in
other cases, a matter of evidence.  But the description is a
sufficient designation of the subject of the alleged contract,
if it furnish the means of making the application and identi-
fication."

From this examination of the authorities, considering, too,
that the contract involved in this case must not only meet the
requirements exacted by a court of chancery as precedent to
a decree for its specific performance, such as certainty,

mutuality and fairness, but must also meet the requirement
of the Statute of Frauds, 29 Car. 21, ch. 3, par. 4, we have
concluded that if the writing itself supplies information from
which it may be naturally and legitimately inferred that the
parties intended it to affect a certain definite tract of ground,
that parol evidence should have been admitted to connect the
description contained in the contract with the land to which
it refers, but that if it did not supply such information, parol
evidence was not admissible. The question then is, whether
the contract under consideration did supply that informa-
tion.

It is in the form of a receipt, and it sets forth precisely
the names of the parties, the price to be paid, the exact
dimensions of the tract, the property of which it is a part,
its location with reference to Back River and Eastern Ave-
nue and a fence surrounding the Wright property, it recites
the payment of $600 on account of the purchase price, and
fixes the time for the payment of the balance. It may natur-
ally be assumed from that that the vendor intended to sell
and the vendee expected to buy a certain definite tract of
land owned by the vendor facing Back River and parallel
with Eastern Avenue in Baltimore County, for it is not
likely that the vendor would have sold a part of her land
without knowing what part she sold, or that the vendee would
have paid $600 on account of the purchase price without
knowing what he was purchasing. And it may be fairly
inferred from the contract itself, taken in connection with
the evidence as to the circumstances under which it was
made, that the parties did deal with reference to definite and
specific property, the location of which was known to both
of them. Parol evidence was therefore admissible to con-
nect the description in the contract with the land which was
intended to be described. To do that, the testimony of the
surveyor, offered to establish that connection, which was ex-
cluded by the trial court, was relevant and proper, and there
was error in excluding it. There was error, too, in dismiss-
ing the bill of complaint, because, in view of the appellant's
offer, the court was not at liberty to assume that he would

not be able by proper evidence to identify the land referred to by the witness Pohmer with the land described in the contract. It will, therefore, be necessary to reverse the decree appealed from and remand the case, in order that the appellant may have an opportunity of adducing such evidence.

We do not, of course, express any opinion as to the ultimate disposition of the case, because, upon the conclusion of the appellant's case, the appellee will have the right to offer any proper evidence tending to support his denial of the allegations of the bill of complaint.

> *Decree reversed, and cause remanded for further proceedings in accordance with the views expressed in this opinion, the costs of this appeal to be paid by the appellee.*