W. J. NEULAND *v.* HIRAM MILLISON, ET AL.

[No. 140, October Term, 1946.]

596

*Decided June 11, 1947.*

The cause was submitted to MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*William O. E. Sterling, Philip H. Dorsey, Jr.,* and *Dorsey & Sterling* submitted on brief for the appellant.

*Robert E. Wigginton, William Aleck Loker* and *Loker & Wigginton* submitted on brief for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is a suit by a real estate broker (plaintiff, appellant) for a commission. The trial took the form of a hypothetical specific performance case between defendants (appellees) as vendors and Frank Pollick as vendee. Plaintiff alleges that he procured a purchaser (Pollick) who entered into a valid, binding and enforceable written contract with defendants, which was signed by defendants, for sale by defendants to Pollick of certain real estate in St. Mary's County at a price of $78,750, plaintiff to receive a commission of $3,750 for his services. Defendants, virtually admitting plaintiff's other allegations, contend that the written contract of sale with Pollick was not valid, binding and enforceable because the description of the property was not sufficiently definite. The case was tried before the court without a jury. At the close of plaintiff's case the court granted a "motion to dismiss," which it treated as equivalent to a motion for a directed verdict. From judgment for defendants for costs, plaintiff appeals. We shall deal with the case on the same basis as the lower court did, considering only the legal sufficiency, not the weight, of the evidence. *Cf. Helmik v. Pratt,* 153 Md. 685, 696, 139 A. 559.

If the written contract could have been specifically enforced by defendants, plaintiff is entitled to his commission. Code, 1939, Art. 2, sec. 17. The converse does not necessarily follow. If plaintiff, pursuant to his employment, procured a purchaser who was able, willing and ready to buy upon defendants' terms, plaintiff would be entitled to his commission, notwithstanding defendants refused to sell and plaintiff could not bind them or the purchaser compel them to sell. *Singer Construction Co. v. Goldsborough,* 147 Md. 628, 128 A. 754. Plaintiff is not suing on the written contract, but for services in procuring the contract or the purchaser.

If he had procured a purchaser who made an oral and hence unenforceable agreement to buy but was able and willing to perform the agreement, he would have been entitled to his commission. *Restatement, Agency,* sec. 445, comment d. In the instant case, if plaintiff and defendants were restricted by the "parol evidence rule" to the written contracts between defendants and Pollick, there is at least color for argument that these writings show performance by plaintiff and breach by defendants.

Defendants own a triangular tract of land in St. Mary's County, containing 31 acres, bounded on two sides by Three Notch Road and Great Mills Road (which meet at an acute angle) and extending west from the junction of these roads at the United States Navy Reservation. Part of defendants' property, at the cross roads, is used by them as a restaurant. By an agreement dated August 1, 1945, defendants gave Pollick, "his heirs and assigns, the privilege of purchasing" on or before January 7, 1946, an area of 12½ acres "to be selected from the entire Millison tract" of 31 acres, on which it was proposed to erect "a suitable commercial center including a hotel and apartment buildings, but said purchase is not to include that portion of the property now being used as Millison's Restaurant." The sellers were to "include site of the present gas station in the property to be conveyed" and the purchasers were to agree "not to erect any gasoline station or garage or restaurant except in Hotel" on the 12½ acre tract. Defendants were to "retain and operate that portion of the property" then "being used as a restaurant," but were to "remodel the exterior of the restaurant building to conform with the architecture of the other commercial buildings in the entire tract" and were not to "erect any commercial buildings" on any part of the 31 acre tract outside of that covered by the option "which would be similar in character or used for the same purposes as those proposed to be built" on the 12½ acre tract. It was not to be the obligation of

defendants "to see to it that the trailers are removed by the Government." If "Government lease on trailer site" could not be cancelled, the option was "to be null and void." The price was to be $78,750, payment of $10,000 cash on or before January 7, 1946, balance of $68,750 at the time of settlement, on or before April 1, 1946, plaintiff "to receive a commission of $3,750 in payment for his services," to be deducted from the proceeds of sale in making settlement.

By an agreement dated January 7, 1946, defendants sold to Pollick, and Pollick purchased from defendants, the tract containing 12½ acres, "to be selected from the entire" Millison tract, "this purchase, however, not to include that portion of said property now being used as Millison's Restaurant, but to include the site of the present gas station," at the price of $78,750, of which $10,000 had been paid, $15,000 was to be paid on or before April 1, 1946, and defendants were to "accept as balance" $50,000 "in capital stock" of the Lexington Park Commercial Center, Inc., to be incorporated in Maryland "to hold title to and develop" the tract sold, which stock "will be one-fourth of total capital stock of said corporation." "Balance," $3,750, was to be paid to plaintiff "as a commission in payment for his services." The contract contained covenants similar to other above-mentioned provisions of the option.

By an agreement dated March 29, 1946, between Pollick and defendants, reciting the option agreement of August 1, 1945, and the contract of sale of January 7, 1946, and that the parties "are now desirous of vacating and cancelling said agreement," the parties, in consideration of $12,500 [including the $10,000 paid under the contract] paid by Hiram Millison to Pollick, agreed "to vacate and cancel" the option agreement and the contract of sale and "the same are hereby vacated and cancelled." If these three written contracts between defendants and Pollick were the only evidence, or the controlling evidence, in the instant case it might well be argued that the third contract suggests no question as

to enforceability of the second, but rather affirms enforceability by "vacating and cancelling" it for a consideration of $2,500 paid by Millison. However, these contracts were not an integration of the contract between plaintiff and defendants—or of the *reasons* of defendants and Pollick for the third contract. *Cf. Wigmore on Evidence,* 3d Ed., sec. 2445. Hence they are not conclusive. Pollick says defendants paid the $2,500 "to pay some of our. expenses so we would not sue them for specific performance." "I asked for $17,000 and we compromised at twelve-five." The question therefore remains whether before the compromise the contract of sale was enforceable.

In August, 1945, Pollick had a plat prepared by an architect, John M. Walton, showing the excluded restaurant property and the proposed commercial center on the adjoining 12½ acres. The excluded property was shown as a sector bounded by the two roads, as *radii* from their junction, and a connecting arc. The 12½ acres was the remainder of a larger sector bounded by the same roads and an arc from the same center. Between the restaurant property and the commercial center was shown a road proposed by some St. Mary's County planning unit. Pollick says he showed the plat to Millison. Walton says it was prepared, after showing Millison a preliminary sketch and "getting his reaction," to conform with his "reaction." Pollick told Millison, when "we made the option, that we would have to employ an engineer to determine the lines." Pollick and Millison each, on or about September 17, 1945, had a plat prepared by an engineer, Pierre M. Ghent, Pollick's showing the 12½ acres, after exclusion of the restaurant property, Millison's showing the western remainder of the 31 acres. In December, 1945, Ghent surveyed the property for Pollick and in January, 1946, prepared a plat from his survey, showing the 12½ acres (and the excluded restaurant property). The Walton plat and the plat of the Ghent survey were offered in evidence. Pollick testified, without objection, that Ghent told him

Millison was satisfied with the boundary shown by the survey. Pollick says the outlines shown on the Walton and Ghent plats are "approximately" the same, "only they might not be right to the inch, you know; an architect made the other one; this was made by a surveyor." Walton says the two plats show "somewhat the same boundaries." To the inexpert eye they look substantially the same, except that the Ghent survey is not a perfect sector, because both roads bend inward at the western end of the 12½ acres.

The option was drafted by plaintiff, the contract of sale by Pollick's lawyer, Mr. John H. T. Briscoe. Mr. Briscoe was asked, "Was there any discussion as to the description of the land?" Objection to this question was sustained on the ground that "the contract must speak for itself and cannot be varied." As the question was not followed up by a question, or proffer to show, what (if anything) was said, plaintiff was not injured by the ruling, whether the answer would have been "yes" or "no."

Ghent on his survey saw a fence or "stockade" running across the property, from road to road, about 60 or 70 feet west of the centre of his eastern (curved) boundary of the 12½ acres. Mr. Briscoe says the "stockade" was 200 or 300 feet west of the Ghent boundary.

No question arose as to the description or boundary of the 12½ acres until the day before March 29, 1946, which apparently had been agreed upon for final settlement. Pollick contended that the eastern boundary was that shown on the survey; Millison insisted upon the "stockade." Pollick was disposed to yield, but an associate of his, one McGinnis, refused to do so. They "argued all day" and finally compromised by cancelling the contract on the terms above stated.

Ghent, while testifying, had with him the plat dated September 17, 1945, that he prepared for Millison. Plaintiff asked that he produce it. On objection the request was denied. In requesting production of the plat counsel said, "We are trying to show that Millison actually

knew at the time he entered into the contract of sale what land was intended to be conveyed by the contract of sale. We understand that the plat shows the 12½ acres of land which are identical to the [January] plat that you see, of 12½ acres." The court's exclusion of the September plat seems to be based upon failure of plaintiff to take advantage of the opportunities to get pre-trial information—and partly upon the view that therefore plaintiff has "no right to obtain access to Mr. Millison's work." We think relevant evidence from a witness at the trial cannot properly be excluded because of failure to get it before trial. As a matter of trial tactics, pre-trial examination is preferable to taking chances with a hostile or reluctant witness. But if a party neglects the former opportunity, he is not thereby precluded from taking the latter chance.

If defendants in September had a plat prepared by Ghent which showed the same boundaries as the plat prepared by Ghent for Pollick in January, this would be some evidence that the parties before March (if not before January) had agreed upon the boundaries as contended by Pollick. Ghent testified that the September plat prepared for Millison did not include the 12½ acres but only the portion of the 31 acres west of the 12½ acres. But the eastern boundary of the western property would be the western boundary of the 12½ acres and would necessarily determine the eastern extent (if not the exact boundary) of the 12½ acres, e. g., whether the 12½ acres could extend only to the "stockade" or to the boundary on the January plat. Indeed we think the evidence regarding the Walton plat, together with defendants' failure to question either the Walton boundary or the January plat until the day before final settlement, might be some evidence of agreement upon location of boundaries of the 12½ acres and the restaurant property.

In the main the material facts and the applicable legal principles are clearly and succinctly stated in the opinion of the lower court. We think, however, that

the rulings on admissibility and legal sufficiency of evidence reflect too broad application of the "parol evidence rule" and of the analogy to a specific performance case.

The lower court says, "The crux of the case very plainly is whether the description which is contained in the contract is sufficiently definite and specific to be enforceable." Although the language of the written contract may suggest, and the lower court mentions, possible uncertainty as to other details, it seems clear that defendants and Pollick were actually in agreement in all respects except as to the boundary of the restaurant property. The corporation had been incorporated and the stock was ready for issue. Whether the western boundary of the 12½ acres should be an arc or a straight line was not important and was not in controversy. Millison, in answer to an interrogatory, construed the contract as giving Pollick 12½ acres "to be selected by him" but not to include any portion of the restaurant property. *Cf. Huntt & Parks v. Gist*, 2 Har. & J. 498, 505; *Thomas' Lessee v. Turvey*, 1 Har. & G. 435, 438. Pollick contended that the boundary of the restaurant property had been determined by mutual assent to the Ghent survey; defendants contended that the "stockade" was the existing physical boundary when the contract was made. It is immaterial which contention was correct. If either was correct, and the contract could have been enforced by defendants accordingly, plaintiff is entitled to his commission.

Regarding defendant's contention as to the boundary the lower court said: "We thought perhaps the contract might have been cured by oral evidence as to just what did constitute the restaurant property; but there is no satisfactory evidence before the Court as to any clearly accepted area that was recognized by both parties as being part and parcel of the restaurant site. A suggestion was made that Mr. Millison claimed that the restaurant site extended back towards the west to a stockade across the property. That would seem to be a not unreasonable contention, in view of the fact that

the trailers were on the west side of that, and the fact that that apparently was the only thing that would, so far as evidence here is concerned, indicate an enclosure for the restaurant property." Regarding this contention we do not wish, and we do not feel able, to express an opinion as to the weight of the evidence. The record contains testimony as to the approximate location of the gasoline station on the January plat, but from the testimony and the plat we are not able to identify the relative location of the gasoline station and the "stockade." If the gasoline station, as well as the trailers, were west of the stockade, and for the reasons stated the lower court considers defendants' contention "a not unreasonable contention," we think these facts (at least if supplemented by testimony as to actual use of the restaurant property or the purpose of the "stockade") might be sufficient to identify on the ground the "restaurant property" mentioned in the contract. In order to obtain specific performance, "the description must be such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description need not be given with such particularity as to make a resort to extrinsic evidence unnecessary. Reasonable certainty is all that is required." *Powell v. Moody*, 153 Md. 62, 66, 137 A. 477, 478. *Cf. Helmik v. Pratt, supra.* A description may be sufficient although the contract necessarily contemplates a survey to prepare a more complete description. *Powell v. Moody, supra,* 153 Md. 67, 137 A. 477. If all the property east of the "stockade" was actually used in connection with the restaurant, that fact might perhaps sufficiently identify the "restaurant property" without specifically showing that the property east of the "stockade" was "clearly accepted" and "recognized by both parties as being part and parcel of the restaurant site."

On the other hand, if before or after the date of the contract of sale defendants and Pollick orally agreed

upon or tacitly accepted, the January plat (or similar plats prepared before January) as showing the boundaries of the restaurant property and the 12½ acres, such facts, together with the evidence that Pollick was willing and able to carry out such an agreement, would be legally sufficient to show performance by plaintiff, whether the plat varied or merely "implemented" the written contract of sale. *Singer Construction Co. v. Goldsborough, supra; Restatement, Agency, supra.*

Defendants (appellees) are Millison, his wife and his mother. He and his mother own the property as joint tenants. Defendants suggest that there is no evidence that Millison was agent for his mother in having plats prepared or agreeing upon boundaries. This point does not seem to have been raised below, and we do not deem it necessary to pass upon it on the present record. On a new trial perhaps direct evidence will be offered. In any event the option, and the contract of sale of 12½ acres "to be selected from the entire" Millison tract, necessarily contemplated "selection" of the 12½ acres, a survey and a more complete description, and negotiations between sellers and buyer for these purposes. Millison and Pollick did frequently confer with each other and with the engineer and the architect. If authority of Millison as agent for his mother is disputed, the questions will arise, whether she held him out as her agent by permitting him to conduct these necessary negotiations, whether he represented himself as authorized to act for her, and whether he or she or both are therefore liable to plaintiff for his commission.

Defendants also contend that plantiff did not procure in good faith a purchaser accepted by them, because he failed to disclose that McGinnis was associated with Pollick in the purchase. *Coppage v. Howard,* 127 Md. 512, 96 A. 642. This contention is without merit. There is no evidence that plaintiff refused, or was asked to disclose any associate of Pollick. Defendants should have known or supposed that Pollick was not acting alone in the purchase. The option was given to Pollick,

"his heirs and assigns," and the contract of sale provided that the property was to be conveyed to a corporation. McGinnis was present on the day fixed for final settlement and participated in the "argument" which culminated in compromise by cancellation of the contract of sale and payment of $2,500 by defendants to Pollick. Nothing was concealed from defendants.

*Judgment reversed, with costs, and case remanded for new or further trial.*