SEARS, ET UX. *v.* POLAN'S 5¢ TO $1.00 STORE OF ANNAPOLIS, INC., ET AL.

[No. 267, September Term, 1967.]

*Decided July 5, 1968.*

*Motion for rehearing filed August 2, 1968; denied September 9, 1968.*

The cause was argued before HAMMOND, C. J. and MARBURY, BARNES, FINAN, SINGLEY and SMITH, JJ.

*George B. Woelfel, Sr.,* with whom were *William M. Travers* and *John S. Collins* on the brief, for appellants.

*Morris Turk,* with whom was *Harry C. Blumenthal* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

The vendors appeal a decree of the Circuit Court for Anne Arundel County in an equity suit, in which two cases were consolidated in one, which dismissed their bill seeking rescission

of a contract for the sale of real estate and ordered them to specifically perform, as prayed in the purchaser's bill of complaint. We affirm the lower court.

On July 25, 1964, Bernard W. Sears and his wife contracted for the sale to Polan's 5¢ to $1.00 Store of Annapolis, Inc., for $100,000, of "40 acres, more or less, lying on the South side of Best Gate Road, on the East side of the abandoned B & A Railroad right of way, being a portion of the property described among the land records of Anne Arundel County in Liber 775, folio 189." The evidence showed that at the time of the contract the Searses owned a parcel of ground at that location in excess of 61 acres. The agreement provided that "The exact area sold is to be determined by a survey to be ordered and paid by the Buyer and a copy thereof made a part of this agreement, * * * :" Upon acceptance of the contract, the buyer was given 90 days to conduct tests on the land if he so desired, and 10 days after that to submit an application for rezoning of the tract. However. the buyer was given the right to waive the rezoning condition to the contract. Settlement was to be within 30 days after final determination by the zoning authority.

A separate agreement, executed the same day and made a part of the sales contract, recited that the parties had agreed upon a price of $2,500 per acre and that if the survey should produce a deviation from the 40 acres purported to be sold by the primary contract, adjustments would be made to the $100,000 purchase price to the extent of $2,500 for each acre of variance.

The vendors' broker was Carlton L. Foster, Inc., whose authorized agent, Ronald C. Paape, exclusively represented the vendors in the negotiations preceding the contract. In accordance with the agreement, the buyer drew a $5,000 check payable to Carlton L. Foster (individually) as an escrow deposit, and left it with Paape, who neither deposited it in a bank nor informed the vendors of its existence.

On October 20, 1964, for a stated consideration of one dollar, Polan's, Inc., assigned its rights under the Searses' contract to the broker's representative, Ronald C. Paape, and on July 7, 1965, Paape assigned the contract to The Paape Development Company, Inc. These assignments were made without the knowledge of the vendors. In fact, when the buyer's at-

torney sent the rezoning application to the Searses for signa-
ture as legal owners of the tract, the named purchaser on the
application was still Polan's, Inc., even though the contract had
already been assigned to Paape. The application was filed with
the county on October 26, 1964, along with a survey map, pre-
pared by J. R. McCrone, Jr., Inc., which indicated that the
Searses' tract was comprised of three separate parcels, and that
the two unimproved parcels added up to 37.7 acres.

When the rezoning application was submitted, Anne Arundel
County was in the process of converting from county com-
missioners to a charter form of government. As a result, many
zoning applications, including the Polan's, Inc. application, lay
dormant. After several delays in obtaining rezoning, the pur-
chaser decided to waive the rezoning condition, and by letter
dated November 9, 1965, the attorney for "the Paape Develop-
ment Company, Inc., assignee of Polan's 5 Cents to $1.00 Store
of Annapolis, Inc.," informed the vendors that it was ready to
settle on November 12. Apparently, this was the first notice to
the Searses that the contract had been assigned.

The appellants filed a bill for declaratory relief praying for
a decree declaring the contract null and void, and The Paape
Development Company, Inc., then filed a bill for specific per-
formance. The cases were consolidated for trial purposes by
agreement of the parties.

The appellants make a tridentated attack on the contract's
amenability to specific performance, contending: (1) that the
description of the land contained in the contract was so vague
and insufficient as to render the contract unenforceable; (2)
that the real estate agent Paape violated his fiduciary relation-
ship with the vendor, in that he was serving two masters,
which vitiated the assignment of the contract; and (3) that the
appellees did not pursue the rezoning of the property with
proper diligence.

i

It is well settled law, in this state and elsewhere, that to suc-
cessfully maintain a bill for specific performance of a contract
for the sale of land " 'the description [of the land used in the
contract] must be such as to enable the court to determine with
certainty, with the aid of such extrinsic evidence as is admis-

sible under the rules of evidence, what property was intended by the parties to be covered thereby. 'The description need not be given with such particularity as to make a resort to extrinsic evidence unnecessary. Reasonable certainty is all that is required.' *Kraft v. Egan,* 76 Md. 243; *Engler v. Garrett,* 100 Md. 387." *Powell v. Moody,* 153 Md. 62, 66, 137 A. 477, 478 (1927), followed in this Court in *Baker v. Dawson,* 216 Md. 478, 491, 141 A. 2d 157, 164 (1958), and *Neuland v. Millison,* 188 Md. 594, 604, 53 A. 2d 568 (1947). The fact that the agreement itself calls for a survey to render the description more precise does not affect the validity of the contract providing there is sufficient identity of the land to have allowed a meeting of the minds of the parties to the contract. "A description may be sufficient although the contract contemplates a survey to prepare a more complete description." *Neuland v. Millison,* 188 Md. 594, 604, 53 A. 2d 568 (1947); *Powell v. Moody,* 153 Md. 62, 67, 137 A. 477 (1927).

In the instant case the description in the contract of the land to be conveyed was sufficiently definite to identify the land in the minds of the contracting parties with reasonable certainty. The Searses owned three parcels of land south of Best Gate Road, on the east side of the B & A Railroad right of way. The contract called for the conveyance of a tract of 40 acres more or less, with an addendum providing for an adjustment at the rate of $2,500 per acre pending the result of the survey, which was expressly contemplated by the parties to the contract, more accurately describing the property by metes and bounds. At the time of the execution of the contract the Searses owned approximately 61 acres of land south of Best Gate Road and east of the B & A Railroad right of way. Parcels two and three combined contained 37.7 acres, parcel two containing $27\frac{1}{8}$ acres and parcel three, $10\frac{1}{2}$ acres. From the survey prepared by J. R. Mc-Crone, Jr., Inc., it is obvious that parcels two and three comprised the 40 acre tract to which the parties to the contract had reference as the subject matter of their agreement. Parcel number one appears to consist of 23.4 acres, which if it were to be combined with the contiguous parcel number two would form a tract in excess of fifty acres. It is obvious that the parties to the contract contemplated the combining of parcels two and three to form the 40 acre tract.

Marion J. McCoy, an employee of the Planning and Zoning Office of Anne Arundel County, testified that an application for the rezoning of the subject property had been filed on October 26, 1964, which application bore the purported signature of Mr. Sears, and that a plat was filed with the application which the witness identified as similar to the Plaintiff's Exhibit No. 6, which plat designates by metes and bounds the three parcels owned by the Searses, including parcels two and three. Subsequently, another plat was prepared by J. R. McCrone, Jr., Inc., designated as Plaintiff's Exhibit No. 7, which is substantially the same as Exhibit No. 6 and which shows parcels two and three to contain 40 acres, although at the hearing it was testified by the surveyor that only 37.7 acres remained in the designated 40 acre tract because several outgoing conveyances had not been subtracted from the 40 acre tract. We think it can be said with reasonable certainty that the contract embraced the 37.7 acres comprising parcels two and three of the Searses' land.

ii

On the surface a plausible argument is seemingly presented by the appellants' contention that Paape was serving two masters; however it does not withstand analysis. Paape was agent for Carlton L. Foster, Inc., the broker, and in such a capacity he had an obligation to the vendors to obtain a purchaser at the price, and under terms and conditions, acceptable to the vendors, for which he was to receive a realtor's commission, in this case $10,000. However, prior to the consummation of the sale, he was engaging in activity on behalf of the buyer, he eventually became the assignee of the contract of sale and ultimately assigned it to The Paape Development Company, Inc., which is the plaintiff in the suit for specific performance. A recitation of these facts would make it appear that Paape breached his fiduciary relationship as agent for the vendors, in that he placed himself in a position where he would be subject to a conflict of interests and failed to disclose his own interest in the contract to his principals while he was still their agent. The duty imposed upon the real estate agent in such a situation has been succinctly stated by Judge Hammond, now Chief

Judge, in *Hardy v. Davis,* 223 Md. 229, 164 A. 2d 281 (1960), wherein speaking for the Court he stated:

> "During the term of the agency, a real estate broker cannot act for both vendor and vendee in respect of the same transaction because of possible conflict between his interest and his duty in such case, and he must disclose to his principal all facts or information which may be relevant or material in influencing the judgment or action of the principal in the matter. *Coppage v. Howard,* 127 Md. 512, 523; *Restatement (Second), Agency* Sec. 381." *Id.* at 232.

It has also been stated that "an agent can properly deal with the other party to a transaction if such dealing is not inconsistent with his duty to the principal." *Restatement (Second), Agency* § 391, Comment b; and it was held in *Hardy v. Davis, supra,* that it was proper for the agent to loan money to the buyer to complete the purchase.

The basic question which has to be answered is, when was the agency between the vendors (the Searses), and the real estate agent (Paape) terminated. We are of the opinion that it was terminated at the time of the execution of the contract of sale on the 25th day of July, 1964. At that time Paape had secured a purchaser for the 40 acres at the price of $100,000, the price set by the Searses and under the terms and conditions acceptable to them, including the guarantee of the purchase money mortgage by Bernard Polan, individually. It is true that the consummation of the sale was contingent upon the rezoning of the property, subject to waiver of the same by the purchaser. However, the consummation of the contract imposed no additional duties upon the real estate agent.

It is true that Paape held a check of the purchaser originally named in the contract of sale in the amount of $5,000, which was made payable to the broker, Carlton L. Foster. However, the contract provided that "* * * the Purchaser agrees to deposit with Carlton L. Foster, Inc., * * * in escrow, the sum of Five Thousand ($5,000.00) Dollars, and upon settlement of this contract the same shall be paid to the Seller." His duties as an escrowee did not relate to other details attendant to the

consummation of the contract of sale, his responsibility being to see that the $5,000 was available for payment to the vendors at the date of settlement. There is no evidence in the record that he was not prepared to do this. Paape's retention of the check in the file for many months was certainly a censurable business practice,[1] however, there is nothing in the record to show that there were insufficient funds in the bank to cover the check on the date it was delivered in escrow or on the proposed settlement date.

The freedom of action given the agent after the termination of the agency was set forth by this Court in *Hardy v. Davis, supra*:

"The rule is that after the agency has terminated, the obligations the agent bears during the agency, including the duty of disclosure, generally no longer exist. The books spell out the accepted rule that an authority created to perform a specific act or accomplish a particular result is terminated when the purpose which called it into being is achieved. *Mechem, Agency* (2nd Ed.), Secs. 552b, 553. Thus, where an agent, employed to sell property, has procured a purchaser and the sale has been made, absent particular agreement to the contrary or unusual circumstances, the agency is terminated and the agent is free to act for himself or the opposing party as long as he does not hinder, delay or interfere with the sale which has been entered into by the seller and the purchaser. An instruction to this effect, in a case where a broker originally employed by the seller represented the purchaser at the settlement, was approved in *Mayne v. Eig*, 215 Md. 270, 282 because the instruction '* * * relates only to actions subsequent to the signing of the contract.' In *Owners Realty Co. v. Cook,* 123 Md. 1,4, the broker was a lawyer and the buyer he produced was his father. After the contract was signed, the

1. Code (1957), Article 56, § 227A (1968 Repl. Vol.), in the absence of instructions to the contrary, now requires the broker or agent to deposit such funds "expeditiously."

broker examined the title as lawyer for his father, the purchaser. He raised several questions which did not appear unreasonable or designed to avoid the sale. The general rule against dual representation during the agency was recognized but found inapplicable because when the contract was reduced to writing "The sale was then virtually accomplished and the agency of the appellee for that purpose was at an end. There was no subsisting or continuing duty with which his subsequent service to the purchaser was in conflict.' The Court concluded: 'The agencies he accepted for the parties to the sale were successive and not simultaneous.'

"Cases in other states that hold the agency terminates when the contract is signed and that the agent is thereafter free to act in ways that might otherwise be adverse to his principal, include *Moore v. Stone,* 40 Iowa 259; *Short v. Millard,* 68 Ill. 292; *Cockrell v. Maxcey* (Tex. Civ. App.), 202 S. W. 2d 293; *Jones v. Allen* (Tex. Civ. App.), 294 S. W. 2d 259." 223 Md. at 233, 164 A. 2d at 283.

See also *Silverman v. Kogok, Adm'r,* 239 Md. 71, 76, 77, 210 A. 2d 375 (1965); *Buffington v. Wentz,* 228 Md. 33, 178 A. 2d 417 (1962). We agree with the lower court's finding that there was no duty breached by Paape that he owed to the Searses.

iii

Finally, the appellants contend that the appellees did not exercise proper diligence in obtaining the rezoning of the property. The application for rezoning was made within the time specified in the contract of sale and due to conditions beyond the control of the purchaser, the zoning matter never came on for hearing. After the change in the county government, with the attendant changes in zoning procedures, the Planning and Zoning Officer on May 21st, 1965 notified the original purchaser that new applications were to be submitted but qualified the notice, stating: "we regret that we cannot accept these applications until the office of the Zoning Hearing Officer is in operation." Again, on July 1, 1965 another notice was sent

stating that a considerable backlog of pending cases existed and that the Zoning Hearing Officer would reserve "your number for 30 days from the date of this writing." In September of 1965 the vendors were orally notified that the purchaser waived the rezoning requirement, an election given it under the contract, and that it was prepared to make settlement. Although, the agreement provided that time was of the essence of the contract, we, as did the lower court, find no evidence of any culpable delay attributable to the purchaser.

In the suit brought by the appellants to void the contract of sale, the burden of proof rested with them. *Dormay Construction Corp. v. Doric Co.,* 221 Md. 145, 156 A. 2d 632 (1959) ; *Crowther v. Hirschmann,* 174 Md. 100, 197 A. 868 (1938). We think the appellants failed to meet this burden and that the chancellor properly dismissed their bill.

In the purchaser's suit for specific performance we find that the evidence supported the enforceability of the contract and the chancellor properly decreed its specific performance.

*Decree affirmed, appellants to pay costs.*