## WILLIAM J. ALBERT and wife, and others, *vs.* WILLIAM WINN, JAMES ROSS, and others.

Where the answer to a bill for the specific execution of a parol agreement, admits the agreement, and does not plead the statute of frauds, the court will decree a performance.

An agreement respecting lands within the *fourth* section of the statute of frauds must *itself* be *in writing*, but a *trust* within the *seventh* section need not be *constituted* but merely *proved* by some writing.

A written settlement, or an agreement in writing to make one, *before* marriage, in consideration thereof, is valid against creditors.

A *post-nuptial* settlement, reciting an *ante-nuptial parol contract*, is not valid against creditors, because as to them it is a voluntary conveyance, the subsequent written instrument not relating back to the prior parol agreement, so as to make the date of that the effective date of the settlement.

Marriage, after it is consummated, cannot be regarded as a valid consideration for a subsequent agreement in bar of the rights of creditors.

An answer in chancery, made in 1846, admitting a parol promise in 1845 to mortgage certain lands, cannot relate back to the parol promise and give it efficacy as of the time it was first made, nor prejudice any rights acquired prior to the date of the written admission.

APPEAL from the Court of Chancery.

This appeal was taken from a decision of the chancellor, overruling the claim of the appellants to a preference in the distribution of the proceeds of the sale of "'The Wheatfield Inn," reported in 2 *Md. Ch. Decisions,* 169. Other decisions made by the chancellor and the Court of Appeals, on questions arising in the earlier stages of the cause, are reported in 2 *Md. Ch. Decisions,* 42, and 7 *Gill,* 447. In those cases, as

well as in the opinion of this court in the present case, the facts of the case will be found fully stated.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*S. J. Donaldson* for the appellants. The Court of Appeals decided that the proceedings in Baltimore county court were void for irregularity only. This was all they decided. All the proceedings in that court were exhibited and made part of the proceedings in this case—they were made a *part of the present bill.* The questions thence arising are two:—1st. Is Jones' verbal promise so proved as to entitle the appellants to a specific execution? 2nd. If so, is not that promise a lien on the fund, and are not his trustees bound by it?

1st. The answer to the bill in Baltimore county court admits, in unqualified terms, the making of this promise, and though brought into this case for one purpose, it is in for all purposes. It is like a witness upon the stand. It stands entirely uncontradicted. The promise was made in November 1845. At that time Jones had an undoubted right to the property, for it was before the deed of trust was executed, and before the appellees had any standing in court. This answer comes up to all the requirements of the statute of frauds. *Precedents in Chancery,* 208, *Croyston vs. Banes.* 2 *Ambler,* 586, *Gunter vs. Halsey.* 2 *Brown's Ch. Rep.,* 567, 569, *Whitchurch vs. Bevis.* 1 *Ves., Sen.,* 221, *Attorney General vs. Day.* 6 *Ves.,* 554 to 556, *Spurrier vs. Fitzgerald.* 2 *Atk.,* 155. 2 *Story's Eq.,* secs. 754, 755. 5 *Gill,* 185, 186, *Alexander vs. Ghiselin.* 2 *H. & G.,* 100, *Black vs. Cord.* 1 *Story's Eq.,* secs. 68, 69. *Newland on Contracts,* 201 to 203. 1 *Fonblanque's Eq.,* Book 1, ch. 3, sec. 8.

2nd. Are not the trustees bound by this agreement? They derive title through Jones, and they are here in a representative capacity, and can claim no more than their principal. They take the property *cum onere,* whether by law or contract. 3 *Atk.,* 1, *Lacon vs. Mertins.* 4 *H. & J.,* 132, *M'Me-*

*chen, et al., vs. Maggs.*   3 *Paige,* 374, *Clark vs. Mauran, et al.*
3 *Desaussure's Eq. Rep.,* 74, *Polony and Read's Exc'rs, vs.
Keenan, et al.*

*Thomas S. Alexander* and *Grafton L. Dulany* for the ap-
pellees. The principles governing this case are familiar, and
the only difficulty is in ascertaining the state of facts to which
they are applicable. The *first* bill was filed in the court of
chancery by Hopkins and others, creditors of Jones, on the
14th of September 1846, for the purpose of restraining the
intended preference to the appellants, and an injunction was
accordingly granted by the chancellor. The appellants filed
their first bill in Baltimore county court on the 29th of Sep-
tember 1846, for the purpose of giving a preference in viola-
tion of the injunction granted by the chancellor, and on the
22nd of October following, they filed a second bill in the
same court for the same purpose. Both bills allege the
promise of Jones to convey the "Wheatfield Inn" to the
appellants, and upon them an injunction was granted restrain-
ing the conveyance of that property to other creditors. Before
answering these bills, Jones, on the 26th of the same month,
October 1846, executed a deed of trust of all his property,
except the "Wheatfield Inn," for the benefit of his creditors,
and covenanted to convey that as soon as the injunction of
Baltimore county court could be dissolved. On the 30th of
October 1846, Jones comes in and answers the first bill of
the appellants, and admits his promise to them as alleged
therein, and on the next day a decree was passed thereon,
directing him to bring into court $24,000 to pay the appel-
lants. The present bill was filed in January 1847, by Winn
and Ross, the trustees in insolvency of Jones, in connection
with the complainants in the *original* bill of 1846, to restrain
the execution of the decree of Baltimore county court, and
that decree, and all the proceedings prior to it in that court,
were declared to be null and void by the Court of Appeals,
in 7 *Gill,* 483.

The case then is one of a *parol* agreement, in 1845, to
make a conveyance of the "Wheatfield Inn" to the appel-

lants. This, standing by itself, is conceded to be invalid under the statute of frauds, but it is urged that the answer of Jones to the bill of the appellants, made in 1846, takes it out of the statute, upon the ground that it makes the agreement a written one within the requirements of the statutes. Such is the doctrine of Judge Story, in 2 *Story's Eq.*, *sec.* 755, but his reasoning is refuted by the chancellor in this case, because the defendant may in his answer admit the agreement, and in the *next breath rely upon the statute.* But if the answer be considered the agreement, it was an undue and improper preference under the insolvent laws, and one which he was prohibited from making by the injunction previously granted in chancery. A mortgage then executed would have been void as an undue preference. The answer then cannot be treated as a *new* agreement.

Now treat it as an admission of an antecedent parol agreement. Is this a circumstance entitling the appellants to a decree? As *evidence*, it stands no higher than any other evidence, and is evidence simply of a parol agreement in 1845. Now if it is not efficacious as evidence, is it so as an *admission* by Jones of his having made a promise in 1845, (which was not then obligatory upon him,) obligatory upon us? Could he bind us by admissions made in 1846 after our rights had accrued? We are not bound by Jones' acts, (2 *Story's Eq.*, *secs.* 788, 790, 792,) nor do we claim under him in such a way as to make his admissions or acts binding upon us. We claim above him, for our rights commenced in August 1846, and at that time Jones had no right to make promises or do acts binding upon us. Even a deed reciting a prior parol promise cannot, under such promise, be valid as against the intervening rights of creditors. 7 *Gill*, 354, *Clabaugh, et al., vs. Byerly.*

*John Nelson* for the appellants, in reply. In my view there are but two questions in this case:—1st. Whether there be any evidence in the cause upon which our claim rests? 2nd. Whether it be sufficient to maintain our claim to a priority of lien?

The facts of the case have been fully stated by the counsel for the appellees. Jones was unquestionably indebted to the appellants; about this there is no difficulty. The only question then is, what is the relative claim of the two parties to this suit to the fund in question? That the parol promise was made in 1845, the testimony is perfectly satisfactory and conclusive; about this too there is no question. If that agreement in 1845 had been in writing there would be no doubt of our right to a preference, for the case of *Alexander vs. Ghiselin*, 5 *Gill*, 181, is precisely like this, except there the contract was in reference to personalty. If, therefore, there exist in this case written evidence of the contract of 1845, the principles of the case in 5 *Gill*, 181, apply. The complainants themselves have offered evidence of this by the very averments of their bill, which charges that Jones admitted the fact of having made the agreement of 1845. As to the *fact* of his having made this agreement there can, therefore, be no doubt. Now what is the effect of that *admission*,—of that evidence of this contract, this agreement? If, in 1846, Jones made an admission *in writing* that he made a contract in 1845, whether by answer or otherwise, it is good. We do not set it up as a contract of 1846, but as of 1845. There is no evidence that Jones was *then* embarrassed or insolvent. The statute of frauds says the contract must be *evidenced*, not *made*, in writing, and it is not material *when* this evidence is made, provided it be made before the suit is brought to enforce the contract. It makes no difference that this evidence be furnished by the course of judicial proceedings, or in any other way; it is brought here as *evidence* of the contract. The only way in which this evidence can be got rid of is by showing that it was made by fraud or collusion, and of this there is not a particle of evidence in the record. The *written* admission of Jones is here by his answer just as much as if he had made it in any other way, and we rely upon it, not as an answer, but as *written evidence* of the contract of 1845.

But it is said the appellants proceeded to get the preference with knowledge and after the deed of trust was executed by Jones. There never was a greater fraud than that attempted

to be perpetrated upon the rights of these appellants by that deed. But it saved whatever rights they had under the agreement of 1845, and besides was pronounced an *absolute nullity* by the Court of Appeals, in 7 *Gill*, 446.

The only question that remains is, how far this admission may be affected by the appointment of the appellees as trustees in insolvency of Jones? Unless the agreement be in fraud of the insolvent laws it cannot be assailed. A party may, *in invitum*, when in insolvent circumstances, confess a judgment and this is not void. There is no proof of collusion. Jones was forced into chancery and he conscientiously asknowledged his agreement, and in this there was certainly no fraud upon the insolvent laws.

ECCLESTON, J., delivered the opinion of this court.

By the report of this cause in 7 *Gill*, 446, it appears that the order of the chancellor continuing the injunction was affirmed by the Court of Appeals.

Upon a subsequent hearing in chancery, at March term 1851, the chancellor filed an opinion in which he says: "In one of the accounts accompanying the report, the whole of the net proceeds of the 'Wheatfield Inn' has been assigned to William J. Albert and wife, in part payment of their claim, No. 26, and the propriety of this appropriation is the principal question now to be decided."

The claim to a preference upon this fund is based on a supposed lien said to be created by a parol promise made by S. Jones, in November 1845, to secure the claim of Albert and wife by a mortgage upon the "Wheatfield Inn." Which parol promise is admitted in the answer of Jones, filed on the 30th of October 1846 to the bill of Albert and wife, which had been filed in Baltimore county court, the 29th September, in the same year.

The chancellor decided that the lien could not be maintained, but the parties might prove their claim and participate in the fund as general creditors. And on the 23rd of May 1851, he passed an order directing an account to be stated

according to the principles of his opinion. From this order the present appeal has been taken.

The statute of frauds has been relied upon as a bar to the lien. On the other hand it is insisted, that the answer of Jones is an admission of the contract in writing, which is such a compliance with the statute as places Albert and wife in the same situation, in regard to the fund in controversy, as if they had received from Jones a deed of mortgage for the "Wheatfield Inn," in November 1845.

The answer alluded to admits the parol agreement and does not plead the statute. It is clearly settled, that in a case where an answer of this description is filed, the court will decree a performance of the contract. The reason for this, which is to be found stated in the authorities generally, is, that the statute was intended to prevent fraud and perjury, and there can be no danger of either fraud or perjury when the contract is fully set forth in the bill and confessed in the answer. Justice Story, however, in section 755 of the second volume of his *Equity Jurisprudence*, intimates, by way of a *perhaps*, that another reason may be added, which is, "that the agreement, although originally by parol, is now in part evidenced by writing under the signature of the party, which is a complete compliance with the terms of the statute." This suggestion the chancellor does not assent to, but considers the contract not sufficient to give any right of preference; the statute operating as a bar notwithstanding the answer. This is his view of the matter, assuming the answer to be properly in evidence before him, the correctness of which assumption he seems to doubt.

Admitting, (but without deciding,) that the chancellor is mistaken and that Judge Story's view is the correct one, still we do not think these claimants are entitled to a preference.

The answer is not relied upon as if it were an answer regularly filed as such in this cause, but it is claimed to be a written acknowledgment or admission of the original parol agreement, which is thereby rendered a valid contract, equally as binding and effective as if it had been in writing and signed in November 1845.

Whether the contract is to be considered as effective and

exerting an influence upon the rights of the appellees from November 1845, or is only to be regarded as a contract of the 30th of October 1845, when the answer was filed, becomes a very important inquiry under the circumstances of this case.

It was said by the counsel for the appellants that the statute of frauds did not require a contract to be in writing, but only to be evidenced by writing, and it matters not whether the writing be simultaneous with or subsequent to the agreement. In this remark as applicable to the question before us, we think he is mistaken. The fourth section of the statute provides: "That no action shall be brought whereby to charge any person upon any contract or sale of lands, tenements or hereditaments, or any interest in or concerning them, unless the *agreement* upon which such action shall be brought *shall be in writing* and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized." In similar language the same section makes provision in reference to agreements in consideration of marriage. The 7th, 8th and 9th sections relate expressly to trusts; the first of which provides, that a declaration or creation of trusts of lands shall be *manifested or proved* by some writing signed by the party enabled to declare the trust. In consequence of these terms trusts, not *constituted*, but merely *proved* by some writing, have been considered sufficiently established, although the ninth section of the act directs, that all grants and assignments of any trusts shall be in writing. Thus it will be seen there is a manifest difference between the language of the fourth section and that of the seventh. This difference is treated of in *Willis on Trustees*, 44, 45, in 10 *Law Lib.*, 20, 21. In the course of his remarks on the subject he says: "The fourth section of this statute requires contracts for *any interest* in land to be in writing, and extends also to the consideration of the agreement, which is justly considered as an integral part of the contract. A trust of real estate, being an interest in land, might perhaps have been considered as within that clause were it not that the seventh section of the statute mentions trusts of lands, and directs that they shall be manifested and proved by some writing signed by the party."

In *Randall vs. Morgan*, 12 *Ves.*, 67, the claim was based upon an alleged marriage contract, in support of which two letters were relied on.  One of them written prior and the other subsequent to the marriage.  The Master of the Rolls, (Sir William Grant,) held that the first letter did not amount to a contract.  The second, if relied upon as evidence of a previous promise, he did not think ascertained, or sufficiently pointed out, the promise to which it related, or when the promise was made, whether before or after marriage.  Such a promise, if after the marriage, is spoken of as a *nudum pactum*, and the recognition of it by the letter as not giving it any validity.  But after supposing this letter referred to some parol promise before the marriage, a very strong doubt is expressed whether the court could construe that into an acknowledgment of a debt; "for," says this learned jurist, "the promise being in itself a nullity, producing no obligation, a written recognition after the marriage would give it no validity.  Otherwise the construction of the fourth section of the statute would be just the same as the seventh, which requires only that a trust shall be manifested by writing.  Upon that clause it is not necessary that the trust shall be constituted by writing.  It is sufficient to show by written evidence the existence of the trust. But the fourth clause requires the very agreement to be in writing and signed by the party to be charged therewith."

In that case the rights of creditors were involved; and that we understand to be the ground on which it is supposed the subsequent written acknowledgment of a parol promise, even if made before marriage, would not sustain the claim.

There can be no doubt that a written settlement, or an agreement in writing to make one, before marriage, in consideration thereof, is valid against creditors.  And there are decisions holding a written acknowledgment, made after marriage, of a prior parol agreement may be carried into effect by a court of equity, notwithstanding the claims of creditors may be interfered with.  But later opinions, and we think the better ones, maintain the opposite doctrine.  Mr. Atherly is in favor of this view of the subject, in his work on *Marriage Settlements*, 149, 150; in 27 *Law Lib.*, 78, 79.  He there finds

fault with those decisions which sustain the validity of such agreements, and calling to his aid the opinion of Sir William Grant, in *Randall vs. Morgan,* he says: "But the soundness of this doctrine has, with much propriety, I conceive, been called in question by that able judge, the present Master of the Rolls. Indeed I do not see how the doctrine can possibly be sustained; for to support the settlement resort must be had to the previous agreement, and this agreement can only be proved by *parol evidence,* and to admit parol evidence in such a case would be completely inconsistent with the spirit and design of the statute of frauds." See also *Izard vs. Izard,* 1 *Bailey's Eq. Rep., (S. C.,)* 235, 236.

In 1 *Story's Equity, sec.* 374, the distinguished author refers to the struggles which have been made in courts of equity to sustain the validity of a *post-nuptial* settlement against creditors, when it purports to be founded upon a parol agreement before marriage, recited in the settlement. And he concludes by saying: "But the strong inclination of these courts now seems to be, to consider such a settlement incapable of support from any evidence of a parol contract, since it is in effect an attempt to supersede the statute of frauds and to let in all the mischiefs against which that statute was intended to guard the public generally, and especially to guard creditors."

The subject has been examined by Chancellor Kent with his usual ability, in *Reade vs. Livingston,* 3 *Johns. Ch. Rep.,* 481. After a very full review of the authorities his conclusion is, that the validity of such a settlement cannot be maintained.

It is true the late Court of Appeals, in *Worthington and Anderson, vs. Shipley,* 5 *Gill,* 449, do not agree with the chancellor in one portion of his opinion, but they do not intimate the slightest objection to his views in relation to the particular subject now under consideration. They find fault with those who so construe the statute of 13 *Eliz.,* as that an indebtedness at the time of a conveyance conclusively fastens upon the instrument a fraudulent character as an inference of law, because such a construction necessarily places voluntary conveyances and fraudulent conveyances in the same predicament, and consequently every voluntary conveyance must be

a fraudulent one with respect to an antecedent creditor.   They then say :  " A proposition of this kind cannot be maintained, and with great respect for the judgment of the eminent judge who delivered the opinion in *Reade vs. Livingston*, 3 *Johns. Ch. Rep.*, 481, we think he erred in the exposition which he has given to the statute of 13 *Eliz.*"

Our reference at present is not to this branch of the opinion, but to that which relates to the question, whether a *post-nuptial* settlement can be valid, as against creditors, by the mere force and effect of a recital in it of a prior parol agreement?   The chancellor thinks the weight of authority, as well as the reason and policy of the case, are against the validity of such a transaction.   Afterwards he discusses the question, whether a voluntary settlement unconnected with any *ante-nuptial* agreement, if made by a party indebted at the time, is not absolutely fraudulent and void as against existing creditors? And the conclusion which he draws from the cases is, that such settlement is presumed to be fraudulent in respect to existing debts; and that this is a presumption of law which does not depend upon the amount of the debts or the extent of the property in the settlement, or the circumstances of the party. It is this portion of the decision to which the Court of Appeals object.

In *Battersbee vs. Farrington*, 1 *Swanston*, 106, it was considered by the Master of the Rolls as settled law, that a voluntary settlement without fraud, by a husband not indebted, in favor of his wife and children, could not be impeached by subsequent creditors.   And it was held, that a *recital* in a *post-nuptial* settlement of *ante-nuptial* articles was conclusive against those claiming under the settlement, but not evidence against creditors without other distinct proof, for the reason that such doctrine would give the power of excluding creditors by a recital in a deed to which they are not parties.

Now the ground upon which a *post-nuptial* settlement or agreement reciting an *ante-nuptial* parol contract is void as to creditors, must be, that it is a voluntary conveyance.   And if so, it necessarily follows, that the subsequent written instrument does not so relate back to the prior parol agreement as to make

the date of that the effective date of the settlement. If it did, then the settlement would no longer be voluntary, but would virtually become a complete *ante-nuptial* settlement, and valid even against creditors, having the marriage as a valuable consideration. But marriage, after it is consummated, cannot be regarded as a valid consideration for a subsequent agreement in bar of the rights of creditors.

But where an instrument in writing recites or admits the existence of a previous parol promise or agreement relating to lands, the question, whether in such a case the date of the writing or that of the original agreement is to be considered the date of the contract, seems to have been decided in this State, in *Clabaugh and Landers, vs. Byerly,* 7 *Gill,* 362. There two mortgages had been given, one on the 2nd of September and the other the day after. The latter recited, that on the first day of the same month the mortgagor had promised to give a mortgage to the mortgagee. These deeds were recorded in the order in which they bore date. The second mortgagee claimed a preference over the first in consequence of the parol promise recited in the last deed, upon the principle, that equity will consider that as done which ought to be done.

Although, independently of the recital in the deed, there was no written evidence of the parol promise, yet two witnesses testified that the parol promise was made on the first day of September.

On page 362 the court say: "But the alleged promise is contradicted by the mortgagor, and there is no written evidence of it. The agreement then is one of which a court of chancery can take no notice, (see 3*rd Powel, page* 150,) and of course cannot regard it as performed. We are told that the promise is to be found in the deed of mortgage executed on the third of September. The recitals, however, in that deed, cannot prejudice the rights of the appellant acquired before its execution." Here we find it distinctly announced, that a parol agreement relating to land is one of which a court of equity can take no notice; and that the recital or acknowledgment of such agreement in a deed subsequently made, cannot prejudice the rights of other parties acquired prior to the date of the deed.

In the case before us we have seen, that the parol promise by Jones to Albert and wife, was in November 1845. There is no written evidence of it, except the answer of Jones, dated the 30th October 1846, and there can be no doubt that prior to the answer the promise could not bind Jones, or any one else. If, as has been contended, his creditors, in consequence of his peculiar condition, had acquired such rights as would prevent him from making a conveyance of his property, for the purpose of creating a preference in favor of Albert and wife, or any other creditor, would it not be a direct violation of the principle established in the case last cited, to hold that the admission in the answer can relate back to the parol promise, and give it efficacy as of the time when it was first made? To do so, would surely allow the admission to prejudice rights which had been acquired prior to the date of it, when the court have said, most explicitly, the recitals in a deed could have no such effect. And giving to this answer the effect which is claimed for it by the appellants, would be in opposition to the principle, on which we suppose is founded the right of creditors to consider as voluntary, and consequently void as to them, a *post-nuptial* settlement, even where it recites a parol agreement made previous to the marriage. There the subsequent writing does not, by relation, make the original parol contract *the contract*, for if it did, as has already been suggested, the creditors could not impeach it.

Indeed the doctrine on which this claim to preference is sought to be maintained, through the effect of this answer, if established, would open a wide door for the introduction of frauds, and the claims of creditors would become exceedingly insecure. Not intending by this remark, however, to intimate even a suspicion of any deliberate fraudulent purpose on the present occasion, but simply expressing the opinion that such doctrine, if allowed, would afford facilities for practicing frauds upon creditors.

Having expressed or intimated the opinion, that the answer could not be allowed to prejudice any rights existing prior to its date, it becomes necessary to inquire whether the cred-

itors of Jones, in consequence of his peculiar condition, had acquired such rights as prevented him from securing to the appellants, by virtue of the admission in his answer, the preference claimed by them?

The former appeal in this case came up on the chancellor's order continuing the injunction, which had been granted by him on the 13th January 1847, restraining the execution of the decree obtained on the 31st of October 1846, in Baltimore county court, by Albert and wife, against Jones. The bill on which this decree is founded was filed in Baltimore county court on the 29th of September 1846, and in that cause, on the 30th of October following, was filed the answer of Jones, which constitutes the chief ground of controversy at present. On the 14th of September, a bill had been filed in the chancery court against Albert and wife, and Michael S. Norman, on which an injunction issued restraining Jones "from conveying, assigning or transferring, any of his property or effects, rights or credits, to the said Albert and wife, and Norman, to secure or pay the debt due to them, in preference to the rest of his creditors, and to restrain the said Albert and wife, and Norman, from receiving any such preference."

On the appeal the effect of this injunction upon the decree of Baltimore county court was considered. And the appellate tribunal held, that the chancellor was right in issuing the second injunction for the purpose of preventing the execution of the decree, and that it was proper "to treat the whole proceeding in Baltimore county court as a nullity." The first injunction was in full force when the bill was filed in the county court, and when the decree upon it was passed. And as the proceedings in chancery had precedence, in point of time, they were considered as giving that court the whole jurisdiction in regard to the distribution of Jones' estate, and especially for the purpose of preventing "Albert and wife from securing to themselves a preference in any way."

It cannot be successfully contended that the proceeding in the county court was a legal remedy, adverse and coercive against Jones, which the injunction of the chancellor did not

design to reach, and consequently was neither giving or receiving such a preference as that injunction designed to prohibit. For this point was considered and settled in the former decision. Nor does that decision pronounce the decree alone to be a nullity, but also "the whole proceeding in Baltimore county court." And on page 483 it is said: "Until this proceeding before the chancellor was properly disposed of, and while the injunction under it remained in force, the parties were restrained, *in any form*, from seeking the preference which it prohibited." Again, on page 484, the court speak of the injunction as "intended to prevent Albert and wife from securing to themselves a preference in any way," and their resort to another tribunal, designed or not, under the circumstances, is held to be a disregard of the injunction.

Thus it is evident from the decision of the Court of Appeals *in this cause*, that at the date of Jones' answer, which is relied upon as securing to the appellants the preference now claimed, he was under an injunction restraining him from giving a preference, *in any form* or *in any way*. And a decree based upon that answer, for the very purpose of enforcing this preference, is held to be a nullity, as likewise all the proceedings in that cause. Under such circumstances it is difficult to perceive how the admission of the contract in the answer can give, or aid in giving, the preference. Surely this admission can have no greater effect than it could if made by recital in a deed. And such recital could create no lien, as of the date of a deed executed when the answer was signed, because it would have been void in consequence of the express prohibition of the injunction; nor could it establish the lien, by relation to the original parol promise, according to the views already stated.

The chancellor's order of the 23rd of May 1851, must therefore be affirmed, with costs in this court to the appellees, and the cause sent to the circuit court for the city of Baltimore for further proceedings. A decree will be signed accordingly.

*Decree affirmed and cause remanded*
*for further proceedings.*