KISER ET UX *v.* EBERLY

[No. 164, October Term, 1951.]

*Decided May 14, 1952.*

Before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

Submitted on brief by *Thomas Lohr Richards* and *Neil C. Fraley,* for appellants.

Submitted on brief by *Stephen R. Pagenhardt* and *Earl E. Manges,* for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal from an injunction decree of the Circuit Court for Garrett County presents the question whether an oil and gas lease of property at Mountain Lake Park,

described as "all of that tract known as the Hamilton Hall property," includes a vacant lot containing about one acre.

The case grew out of the discovery of natural gas in the Mountain Lake Park region. The lease was obtained by Orville Eberly, complainant, an oil and gas producer, of Uniontown, Pennsylvania, from Harry C. Kiser and Mary M. Kiser, his wife, on September 29, 1950. The lease granted to complainant all of the oil and gas in four properties, together with the exclusive right to drill for, produce and market oil and gas, and the right to enter upon the land for the purpose of drilling and operating for oil and gas, laying pipe lines, erecting tanks, machinery, powers and structures, to use so much of the premises as may be necessary and convenient for said purposes, and to convey the products therefrom by pipe lines or otherwise. The properties, containing four acres, more or less, were: (1) all of that tract known as the Hamilton Hall property; (2) all of the Hotel England property; (3) all of the Braethorn tract; (4) all of the Kiser Nursery Home tract.

In May, 1951, the Kisers, upon complainant's request, signed two pooling agreements, one for the northern area, the other for the southern area. Each agreement provided that two wells were to be drilled in the area, and each lessor would share in gas royalties in the proportion that his pooled acreage bore to the whole pooled acreage regardless of where the wells were drilled. The Hamilton Hall property was in the northern area, the other three properties in the southern area.

In June, 1951, the Kisers executed a lease giving Roy L. Fletcher the right to drill for oil and gas on the one-acre lot in dispute. Kiser and Fletcher had been advised by William R. Offutt, a member of the Garrett County bar, that the lot could not be considered as a part of the Hamilton Hall property. Fletcher set up his drilling rig on the lot at an expense of about $1,800. Complainant thereupon instituted this suit to enjoin the Kisers and Fletcher from drilling on the lot. The

Court stated that the case resolved itself into a question of credibility, and found that the tract was a part of the property leased to complainant. From a decree enjoining defendants from drilling on the lot, they appealed to this Court.

The lease now before us provides that it shall remain in force for two years, and as long thereafter as operations for oil and gas are being conducted on the premises or oil and gas is found in paying quantities thereon. In some States it has been held that a contract giving the right to explore land for oil and gas and to extract such minerals for a prescribed period of time, and as long thereafter as they are found in paying quantities, on no consideration other than prospective royalties, conveys no corporeal estate in the land, but merely gives a license to mine for the oil and gas and to extract them upon payment of the royalties. Under that holding, so much of the oil or gas as is removed from the land belongs to the parties entitled thereto under the terms of the contract, not as part of the realty but as personalty, and only so much as is removed passes under the grant. *Kelly v. Keys*, 213 Pa. St. 295, 62 A. 911; *Steelsmith v. Gartlan*, 45 W. Va. 27, 29 S. E. 978, 44 L. R. A. 107; *Walla Walla Oil Co. v. Vallentine*, 103 Wash. 359, 174 P. 980. It appears, however, that such a holding is not applicable to an instrument, such as the one before us, which expressly purports to lease the land for the purposes specified, thereby conveying title. *Barnsdall v. Bradford Gas Co.*, 225 Pa. St. 338, 74 A. 207, 26 L. R. A., N. S., 614; *Kennedy v. Burns*, 84 W. Va. 701, 101 S. E. 156.

It has been held in other States that, since oil and gas in place are realty, subject to sale while under the earth's surface, an oil and gas lease grants to the lessee a qualified or determinable fee in the property. *People v. Bell*, 237 Ill. 332, 86 N. E. 593, 19 L. R. A., N. S., 746; *Stephens County v. Mid-Kansas Oil & Gas Co.*, 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; *Federal Land Bank of New Orleans v. Mulhern*, 180 La. 627, 157 So.

370, 95 A. L. R. 948; *Chandler v. Hart,* 161 Cal. 405, 119 P. 516.

In *Guffey v. Smith,* 237 U. S. 101, 35 S. Ct. 526, 529, 59 L. Ed. 856, the United States Supreme Court, speaking through Justice Van Devanter, observed that the Illinois Supreme Court had decided that an oil and gas lease passes to the lessee, his heirs and assigns, a present vested interest in the property, and held that the decision of the State court constitutes a rule of property and must be accepted and applied by the Federal court in passing upon the rights of the parties. Similarly, in Group No. 1 *Oil Corporation v. Bass,* 283 U. S. 279, 51 S. Ct. 432, 75 L. Ed. 1032, and *Burnet v. Harmel,* 287 U. S. 103, 53 S. Ct. 74, 76, 77 L. Ed. 199, Justice Stone, observing that decisions of the Texas courts had characterized oil and gas leases as "present sales of the oil and gas in place," applied the rule of those decisions that ownership of the oil and gas passes upon the execution of the lease from the lessor to the lessee.

In this case it is unnecessary to express any view as to the exact nature of the substantive rights that pass under the oil and gas lease. For, notwithstanding considerable real or apparent conflict in the decisions as to the nature of such rights, all of the cases, with the possible exception of *Walla Walla Oil, Gas and Pipe Line Co. v. Vallentine,* 103 Wash. 359, 174 P. 980, hold that an oil and gas lease conveys an interest in or concerning land. *Mills and Willingham, Law of Oil and Gas,* sec. 36; *Warren, Formal Requirements for Creation of the Oil and Gas Lessee's Interest,* 5 Vanderbilt L. Rev., 177.

We accordingly hold that the agreement before us was required to be in writing by the fourth section of the Statute of Frauds, which provides that "no action shall be brought whereby * * * to charge any person * * * upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them; * * * unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing, and signed by the party to be charged

therewith, or some other person thereunto by him lawfully authorized." 2 *Alexander's British Statutes, Coe's Ed.,* 689, 690; *Albert v. Winn,* 5 Md. 66, 73; *Markoff v. Kreiner,* 180 Md. 150, 158, 23 A. 2d 19.

The Court below admitted in evidence complainant's copy of the lease, on which there were pencil notations as to acreage. Complainant claimed that he made the notations from information given to him by the Kisers. But the Kisers categorically denied that they had given him any such information. As the notations do not appear either on the Kisers' copy of the lease or on the transcript in the land records of Garrett County, they were clearly inadmissible. It is a familiar general rule that parol evidence is inadmissible to vary or contradict the terms of a written instrument. One reason for this rule of evidence is that when contracting parties have discussed and agreed upon their obligations to each other and have reduced them to writing, the instrument is more reliable as evidence than the uncertain memory of man. All prior and contemporaneous negotiations are merged in the written instrument, which is treated as the exclusive medium for ascertaining the extent of the obligations of the parties. Therefore, parol evidence of conversations before or at the time of the execution of a contract cannot be admitted, in the absence of fraud, duress, or mistake. Moreover, when a contract is required by the Statute of Frauds to be in writing, the parol evidence rule should be strictly enforced. As stated in *Coster v. Arrow Bldg. & Loan Ass'n Inc. of Baltimore City,* 184 Md. 342, 349, 41 A. 2d 83, if the court would allow a contract within the Statute of Frauds to be partly in writing and partly in parol, the way would be left open for the very mischiefs that the Statute was intended to prevent.

The trial Court was influenced to some extent by the fact that the acreage schedule attached to the northern pooling agreement, which was signed by the Kisers in May, 1951, indicated that the Hamilton Hall property contained two acres. The Court said that the Hamilton

Hall property could contain only two acres by including the one-acre lot, inasmuch as the six building lots contain only about one acre. On the other hand, complainant's agent, who induced the various landowners to sign the pooling agreements, admitted at the trial (1) that the Kisers had absolutely nothing to do with the preparation of the pooling agreement, and did not tell him to put "two acres" in the schedule, and (2) that he had made the estimate of two acres from the pencil notations which complainant had made on the margin of his copy of the lease.

In *Helmik v. Pratt*, 153 Md. 685, 690, 139 A. 559, the Court of Appeals, speaking through Judge Offutt, laid down the rule that an indispensable term in a contract for the sale of land is the description of the land, either complete in itself or such as supplies information sufficient to enable the court with proper evidence to identify and locate the land with certainty. Thus the description of land is sufficient where it furnishes a foundation for the admission of extrinsic evidence to apply the description to the particular property intended by the parties so that it may be identified to the exclusion of all other property.

We specifically hold that land may be sufficiently described by a particular name by which it is known in the locality in which it is located, if it distinguishes the land from all other property and the boundaries are well defined by reputation. This rule is an application of the maxim, *certum est quod certum reddi potest*. When all the circumstances of possession, ownership, situation of the parties, and of their relation to each other and to the property, as they existed at the time the negotiations took place and the instrument was executed, are disclosed, then if the meaning and application of the instrument, read in the light of those circumstances, are clear and certain, the parties will be bound by it as a sufficient contract. *Mead v. Parker*, 115 Mass. 413, 15 Am. Rep. 110.

In *Henry v. Black*, 210 Pa. St. 245, 59 A. 1070, 1071, where the question was whether the name "Hotel Duquesne property" was a sufficient description in a contract of sale, the Supreme Court of Pennsylvania said: "The identity of the location is fixed by the name of the hotel. Given the hotel site, the lots on which it stands, and the ground properly appurtenant to it, can be ascertained by measurement to a certainty. Our records in rural counties are full of deeds which describe thousands of tracts of land conveyed only by their warranty names. No one thinks of objecting to them for insufficiency of description. If a dispute arises, a survey identifies their location. A copy of the official survey from the land office establishes their exact boundaries and quantities of land. So, here, the identity of the hotel site being fixed, the city and county records establish the boundaries and quantity. This contract then clearly identified the subject of it. That identification furnished the purchaser or a court the means of making clear the boundaries and quantity of land."

Likewise, in *Bates v. Harris*, 144 Ky. 399, 138 S. W. 276, 277, 36 L. R. A., N. S., 154, the Court held that the description of property as the "Muddy Creek farm," containing a certain number of acres, was sufficient, where the vendor owned only one farm on Muddy Creek containing the specified number of acres. In *Koch v. Streuter*, 218 Ill. 546, 75 N. E. 1049, 1050, 2 L. R. A., N. S., 210, the Court held that the description of a property in a contract of sale as the "Ideal Fruit Farm," containing a certain number of acres, was sufficient to comply with the Statute of Frauds. In *Hollis v. Burgess*, 37 Kan. 487, 15 P. 536, the description of a property as the "Snow farm" was sufficient where a farm was commonly designated by that name in the neighborhood where it was located, and was known by the parties by that name, and it was possible for the court, with the aid of extrinsic evidence, to apply the description without doubt to the property intended to be sold.

But parol evidence is not admissible either to supply a description which is so indefinite as to render the identity wholly uncertain or to rectify a description so as to make it conform to the intention of the parties and include property not answering the description in the instrument. *Taney v. Bachtell,* 9 Gill 205, 211. For example, in *Davis v. Ross,* Tenn., Ch. App., 50 S. W. 650, the Court held that the description of property as the "Mills land" was insufficient because there were several tracts known as the Mills land, and it was evident that the minds of the parties had not met as to what tract was intended to be sold. In *King v. Wood,* 7 Mo. 389, it was held that the description "Union Hotel property" was insufficient, because it was not certain whether it included one piece of property or two pieces, and the evidence did not show what was generally understood in the community as the Union Hotel property. In *West v. Cave,* 98 Wash. 237, 167 P. 747, where the issue was whether a contract for the sale of property known as the "J. T. Arrasmith place" included a small strip of land, the Court ruled that, since the strip was not within the fence around the larger property, the fact that it was a part of the property would not have been suggested to a casual observer, and therefore the description was not sufficient to justify holding that it was intended to be included within the property.

In this case the evidence does not establish conclusively that, according to the general reputation in Mountain Lake Park, the one-acre lot was a part of the Hamilton Hall property. The Kisers operate Hamilton Hall as a boarding house. Mrs. Kiser, who is a registered nurse, also manages the Kiser Nursing Home. The tract on which Hamilton Hall is built embraces six building lots, each fronting 50 feet on Deer Park Avenue within the corporate limits of Mountain Lake Park. It is true that Mrs. Kiser has owned both Hamilton Hall and the one-acre lot since 1948. But the lot is separated from the building lots by a strip of land eleven feet wide. It was stated by the Kisers that this strip of

land has been used for a considerable period of time as a road. Complainant, on the other hand, argued that it could not be considered as an "alley" because trees are growing in it and the path winds around the trees.

The testimony describing Hamilton Hall at the time when it was operated as a boarding house under the name of Faith Home in the early years of the century does not expel the doubt as to whether the lot has beeen generally regarded in the community as a constituent part of the Hamilton Hall property. Nelson S. Wood, who for many years helped the former owner to get the boarding house ready for the summer boarders, testified that the lot was enclosed by a fence, which separated it from the boarding house. He further testified that the lot was not used as an accessory of the boarding house, but was cultivated by a neighbor for a truck garden.

Inasmuch as the lease to complainant did not describe the property with sufficient certainty to warrant the finding that the lot was included within its terms, we are impelled to reverse the decree granting the injunction.

*Decree reversed and bill of complaint dismissed, with costs.*