ASIBEM ASSOC., LTD. *v.* RILL ET UX.

[No. 141, September Term, 1971.]

*Decided January 19, 1972.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*John G. Prendergast, Jr.,* with whom were *Smith, Somerville & Case* on the brief, for appellant.

*Marker J. Lovell,* with whom was *J. Richard Wilkins* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

In 1967, Asibem Associates, Ltd., purchased for a consideration ultimately fixed at $25,000 what it believed to be some 47 acres of farmland in Carroll County from Clarence Leonard Rill and his wife, Mabel Mae Rill. Nearly three years later, when it discovered that the metes and bounds description in the deed from the Rills contained some 10 acres to which the Rills did not have title, Asibem brought suit, seeking to recover $5,000, that portion of the total purchase price which Asibem attributed to the 10 acre tract. The court below granted Asibem's motion for summary judgment as to liability, and the case went to trial on the question of damages. Asibem has appealed from a judgment entered in its favor for costs, but awarding no damages.

The factual background is a mosaic of haphazard conveyancing, compounded by a surveyor's error, much like that which we discussed in *Reighard v. Downs,* 261 Md. 26, 273 A. 2d 109 (1971). In 1963, the Rills had acquired what was described as a farm of 118 acres, 3 roods and 25 square perches, before a deduction of three out con-

veyances, referred to in the deed as totalling some 2.24 acres. The deed to the Rills contained no metes and bounds description, the property being identified only by reference to the back title. What was completely overlooked was a 1934 out conveyance of a 10.2 acre parcel, made by the then owners of the property, an omission which was the genesis of a problem which has surfaced more than 30 years later. The 10 acre parcel lay generally north and east of the Rills' farm, and in 1967 was part of a 20 acre field owned by Mr. Rill's uncle and farmed by the uncle's son-in-law.

In 1964, the Rills, who were considering new financing, had a survey made of the property. The fruits of this effort were a metes and bounds description and a plat, neither of which reflected the 1934 out conveyance.

Beginning in 1965, the Rills undertook to subdivide their farm. In a two year period, they sold three lots, each containing less than an acre, and two tracts, one of 55.62 acres, sold to Donald I. Dell and wife, which had a common boundary with the 10 acre parcel on the east, and another of 18.75 acres, sold in May of 1967, to Douglas G. Worrall, the vice president of Asibem, and his wife, who moved into a house on the land which they purchased. This left the Rills with about 40 acres of land.

Worrall testified that in September of 1967, he saw two advertisements in the "Carroll County Times," one offering for sale 50 building lots at $2,000 each, or $50,-000 for the whole. Another offered a lot 300 feet deep with a road frontage of 1,100 feet. Worrall was able to identify the telephone number as Mr. Rill's. Sometime in October, Worrall began to talk to Rill about the land. Here the testimony diverges. Worrall's recollection was that Rill was talking about 50 acres. Rill, on the other hand, stoutly maintained that he said he was selling what remained of the farm, and had walked with Worrall over the boundaries.

Ultimately, an agreement was reached: Asibem would

pay the Rills $29,000, but Worrall and his wife would release Rill from a promise made them to build a road to county specifications, in return for which Rill would reduce the purchase price to $25,000.

One of the curious facets of this case is that no copy of the contract could be found. Rill testified that Douglas Worrall had prepared the contract, but had never given him a copy. Phillip Worrall, president of Asibem, said that Asibem's copy had been destroyed in a fire at his house in Glyndon, two weeks before trial.

In some fashion, the description prepared by the Rills' surveyor in 1964 got into the hands of Asibem's attorney, and was incorporated in the deed which the Rills signed. The deed described the entire farm before the out conveyances as containing 124.361 acres, and not as the 116.66 acres which the Rills presumably acquired. It identified the out conveyances made by the Rills and described the remainder of the tract as containing 47.87 acres. Rill testified that neither he nor Worrall knew the exact acreage and that Worrall chose the figure of "48 acres more or less." Worrall said that he computed it from a plat based on the 1964 survey. Sometime in 1970, Douglas Worrall discovered that Asibem had got something approximating 39 acres and not 47, and on 30 October, suit was brought.

The trial judge concluded that Asibem had received what it bargained for—the remainder of the Rills' farm, and had suffered no damage. Asibem attacks this conclusion on the ground that it was predicated on testimony taken over its objection regarding negotiations which preceded the execution of the contract and the delivery of the deed—testimony which it says was clearly inadmissible under the parol evidence rule, relying on a line of cases which culminated in *Kiser v. Eberly*, 200 Md. 242, 88 A. 2d 570 (1952), where we held that parol evidence was inadmissible to vary the terms of a written lease. A very recent and thorough consideration of the principle may be found in the opinion which Judge

Smith wrote for the Court in *Canatella v. Davis,* 264 Md. 190, 286 A. 2d 122 (1972).

We will assume, *arguendo,* that the testimony was inadmissible under the circumstances of this case, when summary judgment had been entered on the question of liability, although there is some authority for the proposition that parol evidence is admissible on the question of damages for failure of title, 3 Sedgwick, *Measure of Damages* § 964, at 1992 (9th ed., 1912) ; *Nutting v. Herbert,* 35 N. H. 120 (1857). However, we think the result reached below—that Asibem is not entitled to compensatory damages—was correct, but for an entirely different reason: there was no competent proof offered as to the amount of damage Asibem had suffered.

The Maryland cases are in accord with the prevailing rule elsewhere: that if compensatory damages are to be recovered, they must be proved with reasonable certainty, and may not be based on speculation or conjecture, *Maicobo Inv. Corp. v. Von Der Heide,* 243 F. Supp. 885, 893 (D. Md. 1965) ; 22 Am. Jur. 2d *Damages* § 22, at 39 (1965), and that in a breach of contract action such as this one, if a party fails to prove compensatory damages he is only entitled to the recovery of nominal damages, *Wlodarek v. Thrift,* 178 Md. 453, 461, 13 A. 2d 774 (1940) ; 22 Am. Jur. 2d *supra* § 9, at 23.

At trial, Asibem endeavored to prove damages solely through the testimony of Mrs. Beverly Mann, whom it initially attempted to qualify as an expert. Mrs. Mann testified that she was engaged in the real estate business in Hampstead, Maryland, and had been licensed since 1963. When cross-examined by the Rills' counsel as to her qualifications, she admitted that she had not testified in court before. She was then asked:

> "Mrs. Mann, please give the Court your definition of fair market value of a property."

She replied:

> "Fair market value is the price which a buyer will give without duress for a property after it

has been exposed to the market for a reasonable length of time."

Asibem's counsel made a valiant effort at clarification:

"Mrs. Mann, would you restate your definition of the term fair market value please?"

but made even less progress, when Mrs. Mann replied:

"Well, the fair market value of a property is established by exposing the property to the market and when exposed to the market you find a buyer that is willing and able, without duress, and is knowledgeable of the market, to pay the fair market value of the property, within a reasonable length of time."

Maryland Code (1957, 1967 Repl. Vol.) Art. 33A, § 6, although applicable to condemnation proceedings, gives the generally accepted definition of fair market value. It provides, in part:

"The fair market value of property in a proceeding for condemnation shall be the price as of the valuation date for the highest and best use of such property which a seller, willing but not obligated to sell, would accept for the property, and which a buyer, willing but not obligated to buy, would pay therefor * * *."

While we are not to be understood as saying that the expert must parrot the exact statutory language, *Stickell v. City of Baltimore*, 252 Md. 464, 472-74, 250 A. 2d 541 (1969) held that there was no abuse of discretion when a trial court refused to admit the testimony of an expert who was unable to give a reasonable definition of fair market value.

Counsel for Asibem turned to question of Mrs. Mann as regards the three approaches to value. She replied:

"You have the income approach. The comparative or the market value which is really set

forth in your residential appraising. It's what are comparables selling for near you. What is the going rate of property near you."

Then she was asked:

"And what is the third one?"

apparently in the hope of eliciting some discussion of replacement cost less depreciation. Her reply was:

"Oh, my. Income, fair market value and—I can't think. My mind is blank. I can't think. Income approach, market approach and income approach, I can't think. My mind is blank. The income approach is one that would not be used in this property because you don't have income because you don't have an income to go by."

There was more of this sort of testimony, following which there was a colloquy between counsel for Asibem and the court:

"COUNSEL:

Your Honor, I respectfully submit that she has qualified as an expert, and has properly defined the term fair market value.

"THE COURT:

I can't agree with counsel on that. I'll let her testify for whatever it's worth. She has not properly defined fair market value. * * *"

In response to a question asking her opinion as to the value of the 10 acre parcel, Mrs. Mann said:

"By checking out actual sales on the market and memory, which we can't always rely on as we get older, it appears to me that the ten acres

would have been worth five hundred dollars an acre or five thousand dollars in 1967."

She went on to testify that in her opinion, the 39 acre tract was worth $25,000 without the 10 acre parcel (which was the amount of cash Asibem paid), and $29,-000 if the 10 acre parcel were included. This ended her testimony on direct examination.

We think that the finding of the lower court that Mrs. Mann did not qualify as an expert witness was eminently correct, and his assertion—"I'll let her testify for whatever it's worth"—suggests that the court had in mind the rule permitting lay witnesses to testify as to the value of real property if they have knowledge of the values of comparable property in the neighborhood and have adequate knowledge of the property in question, *Webster v. Archer,* 176 Md. 245, 256-57, 4 A. 2d 434 (1939); *Baltimore v. Brick Co.,* 80 Md. 458, 472, 31 A. 423 (1895); Annotation, *Competency of witness to give expert or opinion testimony as to value of real property,* 157 A.L.R. 7, 11 (1945).

Under the rule's strict requirements as to competency, Mrs. Mann, as will be demonstrated, was not qualified, principally because she showed a complete lack of familiarity with the property in question and because her knowledge of comparable properties was nebulous and inconclusive.

On cross-examination, it became apparent that Mrs. Mann had not examined the parcel which was the subject of the controversy, since she had been shown land that was contiguous to the 39 acre tract, when, in fact the parcel was separated from the 39 acre tract by some 487 feet of land owned by Dell.

She concluded her testimony on both direct and cross-examination without endeavoring to support her opinion as to value by referring to sales of comparable properties. Possibly mindful of the injunction that even an expert's opinion is of no greater probative value than the soundness of the reasons given therefor, *Reighard v.*

*Downs, supra* at 34, and having concluded that Mrs. Mann was not an expert, the court questioned her about sales of comparable properties. She knew of four sales in the area in 1967 and 1968 at prices ranging from approximately $530 to approximately $1,570 per acre, but conceded that only one of these properties was landlocked, a four and one-half acre tract which sold for $2,500. She made no effort to describe the physical characteristics of the properties she discussed.

Perhaps because of an awareness of the unsatisfactory nature of Mrs. Mann's testimony, Asibem urges that recovery may be computed mathematically as an appropriate proportion of the consideration paid, relying on 11 Williston, *Contracts* § 1402 (3d ed. 1968) ; *Hepler v. Atts*, 201 Pa. Super, 236, 192 A. 2d 138 (1963), and Annotations, *Damages for Breach of Covenants of Title*, 61 A.L.R. 10 (1929), 100 A.L.R. 1194 (1936).

The rule of our cases, that damages are to be based on value at the time conveyance was to be made and not on contract price, *Clagett v. Easterday*, 42 Md. 617 (1875) ; *Marshall v. Haney*, 4 Md. 498 (1853) raises some doubt whether this technique can be invoked or should be applied in Maryland. Such an argument might have some force in cases where it is clearly shown that the portion of the property where title failed is in all respects similar to or was a part of the remainder of the tract. Such was not the case here. The 10 acre parcel was completely separated from the 39 acre tract, and may well have been landlocked, at least so far as Asibem is concerned. Its value cannot be determined by the use of mathematics alone, and certainly was not established with the required degree of certainty by Mrs. Mann's testimony.

Asibem failed in its effort to prove with reasonable certainty that it had suffered compensable damage. That there had been a breach of contract was established, in the posture in which the case reached us, by the summary judgment against the Rills on the issue of liability.

Since we find that Asibem suffered only nominal damages, we propose to modify the judgment entered below by the trial court.

> *Judgment modified by entry of judgment for $1.00 and costs in favor of Asibem Associates, Ltd., against Clarence Leonard Rill et ux., and as modified, affirmed.*
>
> *Costs on appeal to be paid by appellant.*