THE MARYLAND STATE HOUSING COMPANY *v.*
FISH ET UX.

[No. 21, October Term, 1955.]

*Decided December 1, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Paul Wartzman* and *Alex Steinhorn,* with whom was *Leonard Bass,* on the brief, for appellant.

*John L. Clark,* for appellees.

BRUNE, C. J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court for Howard County which (1) declared void and accordingly annulled a Land Instalment Contract between the appellant, as vendor, and the appellees, as purchasers, (2) required the appellant to account to the appellees for the difference between the total amount paid by the appellees under that contract and the fair rental value of the premises during the period when they occupied the property, and (3) provided for the sale of the property in question, if necessary to enforce the monetary decree in favor of the appellees.

The appellant, The Maryland State Housing Company, which is a Maryland corporation, but not a State agency, and which is sometimes referred to below as the "Housing Company" or the "seller" or "vendor", filed a petition for foreclosure of a Land Instalment Contract, which alleged defaults in payments thereunder, aggregating $200, on the part of the appellees, Franklin W. Fish and Bertha L. Fish, his wife, sometimes referred to below as the "purchasers" or "vendees". The purchasers filed an answer to the petition in which they contended that the alleged contract (usually referred to below as the "Agreement") was void for uncertainty and indefiniteness and by an amendment to their answer they further asserted that the Agreement failed to set out certain information required under Code (1951), Article 21, Section 120, subsections (b) and (c). They also filed a cross-bill, which set up the same contentions and which contained prayers that the Agreement be declared void and that the seller be required to account for monies

received by it pursuant to the Agreement, and also the usual prayer for other and further relief. The decree appealed from was in accordance with the prayers of the cross-bill.

The purchasers contended that the description of the property contained in the Agreement was insufficient for that document to constitute a valid and enforceable contract. The Chancellor upheld that contention and found it unnecessary to pass upon the other grounds upon which the purchasers also claimed that the Agreement was invalid.

The Agreement is subject to the Land Instalment Contracts Act, Chapter 596 of the Acts of 1951, codified as Sections 118-124 of Article 21 of the 1951 Code. Section 118 (1) defines a land instalment contract as "a legally binding executory agreement under which (a) the vendor agrees to sell an interest in property to the vendee and the vendee agrees to pay the purchase price in five or more subsequent payments exclusive of any down payment, and (b) the vendor retains title as security for the vendee's obligation." Property is defined in subsection (3) of Section 118 as meaning "either improved fee simple property or improved chattels real occupied or to be occupied by the vendee as a dwelling where the purchase price does not exceed Fifteen Thousand Dollars ($15,000)."

What constitutes a sufficient description of real estate in a contract for the sale thereof is by no means a new question in Maryland. A review of the earlier cases will be found in *Helmik v. Pratt,* 153 Md. 685, 139 A. 559, in which Judge Offutt, speaking for the Court, said:

"One absolutely essential term in a contract for the sale of land, which must be shown before it can be specifically enforced, is a description of the land, either complete in itself, or which supplies data and information sufficient to enable the court with proper evidence to identify and locate the land definitely and with

certainty. Upon that rule the courts are in substantial accord, but in applying it to specific cases there is no such concord."

More recently, in *Kiser v. Eberly,* 200 Md. 242, 88 A. 2d 570, Judge Delaplaine, in writing the opinion of the Court, reviewed *Helmik v. Pratt, supra,* and a number of other cases both in Maryland and in other jurisdictions, and made a similar statement of the test to be applied in these words:

"We specifically hold that land may be sufficiently described by a particular name by which it is known in the locality in which it is located, if it distinguishes the land from all other property and the boundaries are well defined by reputation. This rule is an application of the maxim, *certum est quod certum reddi potest.* When all the circumstances of possession, ownership, situation of the parties, and of their relation to each other and to the property, as they existed at the time the negotiations took place and the instrument was executed, are disclosed, then if the meaning and application of the instrument, read in the light of those circumstances, are clear and certain, the parties will be bound by it as a sufficient contract."

We shall now apply the test to the facts of this case. The only description of the property contained in the Agreement appears in the following clause which witnesses:

"that the said Seller does hereby bargain and sell unto the said Buyer, and the latter does hereby purchase from the former the following described property situate and lying in Howard County, State of Maryland and known as No. 1927 Furnace Avenue, Howard County State of Maryland, Elkridge, Md (Elkridge Landing—1st district) subject to an annual

ground rent of ($96.00) Ninety Six Dollars to be created by a lease for 99 yrs. redeemable (5) years after date of lease at 6% capitalization. Property being sold subject to existing tenancy at and for the cash price of. .$7595.00"

Then follows a recital that $800 had been paid on account by the purchasers. (The capitalized amount of a $96 ground rent on a 6% basis is $1600, so that the total price of the property in fee simple would have been $9,195.00.)

On September 3, 1952, the Housing Company acquired title to a single tract of land improved by a double house, one part of which was known as No. 1925 and the other as No. 1927 Furnace Avenue, at a price of $8500. On August 15, 1952, the Housing Company . (doubtless in anticipation of acquiring this whole tract) had already entered into a contract similar to the Agreement involved in this case with persons by the name of Fromm for the sale of No. 1925 Furnace Avenue.*

The Agreement between the Housing Company and the appellees is dated September 2nd, 1952, but the date of execution by the purchasers, which is also the date of their receipt for a copy of it, is September 10, 1952.

The Housing Company, without offering any explanation of its reason for doing so, attached to the copy of the Agreement which it filed as an exhibit with its petition for foreclosure a typewritten sheet headed "Description of - 1927 Furnace Avenue, Howard County, Maryland." This document bears the date "November, 1954" and the typed "signature" of Mr. J. R. Curtis, an engineer of Ellicott City, Maryland. It contains a surveyor's description of one part of a tract described in a deed executed in 1935 which conveyed both No. 1925 and No. 1927 Furnace Avenue, but made no division between them. That deed was in the Housing Company's chain of title, and the deed of Setpember 3, 1952, under which the Housing Company acquired title con-

---

* The aggregate price in fee simple would have been $8,595—$6,995 for the leasehold, $1,600 for the ground rent.

tained a description by mestes and bounds which likewise included both No. 1925 and No. 1927 and likewise failed to set forth any line or lines of division between the two. Mr. Curtis was not produced as a witness, but the testimony showed that he was employed by the Housing Company in the fall of 1954, shortly before these foreclosure proceedings and similar proceedings against the Fromms were instituted, to make a survey and plat of Nos. 1925 and 1927 Furnace Avenue, and the description of No. 1927 filed in this case was prepared as a result of that employment. Mr. Curtis' survey, so far as we are informed, was the first and only effort to establish a dividing line between Nos. 1925 and 1927.

While Mr. Curtis was engaged in making his survey, he had a conversation with Mr. Fish, one of the appellees. Mr. Fish's testimony is definite that he did not agree to the location of the dividing line as projected by Mr. Curtis.

There is no dispute with regard to the outlines of the whole tract or with regard to that portion of the dividing line which separates the two portions of the double house. That building is not, however, in the middle of the Furnace Avenue frontage; in fact, it is almost at one corner of the entire No. 1925-No. 1927 tract. There is a shed at the rear of the house, mostly behind the No. 1927 portion, and Mr. Fish claimed it was included in that portion. Mr. Curtis, in making up his plat, extended the line of the dividing wall between the two houses westerly from the front of the houses to the east side of Furnace Avenue. From the opposite end of this dividing line, that is, from the rear of the building, he extended the dividing line easterly by a slightly different course to the northwest corner of the shed; and from that point, he ran the third leg of the dividing line by a still different course to a point almost at the center of the easternmost boundary of the original tract. The last leg of this line is about 275 feet, or

perhaps a little more, in length. No one of the three parts of the Curtis dividing line runs parallel to either the northerly or southerly boundary of the whole tract. Those boundaries themselves are not parallel with each other, as the tract broadens out somewhat to the east as it approaches the Patapsco River, which runs in a southerly direction along the easterly side of the tract at a distance of about 385 feet east of Furnace Avenue. The division shown on the Curtis plat allocates neraly 27,000 square feet of land to No. 1927 and only 17,000 square feet to No. 1925.

Mr. Fish flatly denies that he ever agreed to the line as laid out by Mr. Curtis, states that he never even saw the plat until the day of the trial and asserted that towards the rear of the lot Mr. Curtis' line cut off a strip about ten feet wide which he claimed was a part of No. 1927. He also testified that an examination made at his instance by a title insurance company (when Mr. Fish was negotiating for a building and loan association mortgage) disclosed that there was a question as to title to a strip about ten feet wide along the river at the rear of the tract.

We think that although Mr. and Mrs. Fish took possession of the house known as No. 1927 and lived there for a considerable time and doubtless made some use of the shed and of some adjacent land, these facts alone are not sufficient to establish the boundary of the lot as between No. 1927 and No. 1925. There is no evidence to show that the Curtis line east of the shed conformed to the appellees' actual occupancy of land towards the rear of the lot. In fact, the evidence fails to show any definite line of occupancy.

It is clear from the date of Mr. Curtis' employment and the date of his description of No. 1927 Furnace Avenue that this description could not have been a part of the original Agreement, and its mere physical attachment to the copy filed as an exhibit with the Housing Company's petition for foreclosure could not make it a

part of the Agreement. Furthermore, in view of the clear evidence that Mr. Fish refused to agree to the last leg of the Curtis line of division and in view of the lack of any evidence of the line of the appellees' actual occupancy, there is nothing to show that the Curtis line (or any other line for that matter) was understood or agreed upon by the parties as the dividing line between Nos. 1925 and 1927. Under these circumstances the description contained in the sheet added to the Agreement could not cure any deficiency in the description as expressed in the Agreement itself. *Kiser v. Eberly, supra; Bellevue Club v. Punte,* 148 Md. 589, 129 A. 900. See also *McDonough v. Roland Park Co.,* 189 Md. 659, 57 A. 2d 279. We think that the Chancellor was correct in holding that the description of the property contained in the Agreement was not sufficiently definite to make that instrument valid and enforceable.

The appellant argues that the Agreement could be specifically enforced as a sale in gross and that the deficiency (if any) in the quantity of the land is of such a minor nature that the purchasers are not entitled to any relief. This argument would simply by-pass the defect of indefiniteness, and we think it is not sustainable.

The appellant's argument that a description of property by a street number is sufficient (under *Engler v. Garrett,* 100 Md. 387, 59 A. 648, and similar cases) also fails in the circumstances of this case and is covered by what we have already said, since the evidence shows that the designation did not identify the tract sufficiently. The boundaries of a city lot designated by a street number may be a sufficient identification of a tract, but here we have no comparable situation. We have a double house, one side of which is designated by one number and the other by another number, and a tract of land where neither established occupancy nor local repute has fixed the boundary and where no plat undertaking to show the dividing line was even prepared

until two years after the execution of the Agreement. There was not even an attempt to refer to a plat. Compare *Holm v. Lynd,* 343 Ill. 645, 176 N. E. 57, cited in Judge Macgill's opinion in the Circuit Court in this case, in which a plat executed some five weeks after a contract of sale of land was held unavailing to supply the defect in the description contained in the contract of sale, which referred to a then non-existent plat.

The appellant's contention that the trial court improperly admitted the evidence of a real estate expert as to the rental value of the property seems to us ill founded. The witness was amply qualified as an expert on rental values in the area involved, and he visited the property in question. He states that he did not go all through the house and that he estimated that it contained seven or eight rooms. We do not think that these facts rendered his testimony as an expert inadmissible, though they might have affected its weight.

The appellant also objects to an allowance to the appellees of $600 for repairs, which sum was included in the $800 acknowledged as a down payment in the Agreement. The appellant asserts that these repairs were to be made by the purchasers and contends that they never were made. The only evidence with regard to the making of repairs was given by Mr. Fish. He stated that during the appellees' occupancy of the house it had been painted and papered throughout and that the house was "about $500 better" than when he went in. The appellant offered no evidence at all with regard to repairs having been made or not made, and there is nothing to show what repairs were intended to be covered by the $600 allowance. On this state of the record we think that the Chancellor would have been warranted in concluding that the painting and papering were included in the contemplated repairs and we further think that their value so closely approximated the $600 allowance that we should not be warranted in disturbing his finding on this question of fact. In addi-

tion, it would seem that if the repairs contemplated by the parties and recognized by the Agreement as a part of the down payment were not in fact made, some burden rested upon the appellant to come forward with evidence to show that the consideration stated in the receipt contained in the Agreement had not been received.

In view of our agreement with the view of the Chancellor as to the insufficiency of the description of the lot, it is unnecessary to consider other objections to the validity of the Agreement because of alleged non-compliance with some of the provisions of Section 120 of Article 21 of the Code and the effect of such non-compliance, if such other objections are properly before us in the absence of any ruling thereon by the trial court. (Rule 9 of the Rules and Regulations Respecting Appeals.)

The decree below is affirmed with costs.

*Decree affirmed, with costs to the appellees.*